Gulf States v. PUC 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN



 



ON MOTION FOR REHEARING


 




NO. 3-92-046-CV





GULF STATES UTILITIES COMPANY, OFFICE OF PUBLIC UTILITY COUNSEL,


AND PUBLIC UTILITY COMMISSION,



 APPELLANTS


vs.





COALITION OF CITIES FOR AFFORDABLE UTILITY RATES, ET AL.,



 APPELLEES


 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT



NO. 447,502, HONORABLE PAUL R. DAVIS, JR., JUDGE PRESIDING



 



 We withdraw our opinion of September 15, 1993, and substitute this opinion to
grant in part all the parties' motions for rehearing, except Gulf States' motion, which we overrule.

 The Public Utility Commission of Texas, the Office of Public Utility Counsel, and
Gulf States Utilities Company appeal from a district-court judgment rendered in a suit for judicial
review of the Commission's final order in an electric-utility rate case conducted under the Public
Utility Regulatory Act (PURA), Tex. Rev. Civ. Stat. Ann. art. 1446c (West Supp. 1994). (1) The
district-court judgment reverses the Commission's final order and remands the case to the
Commission with instructions. We will modify the district court's specific instructions on
remand, and affirm the judgment as modified. See Administrative Procedure Act ("APA"), Tex.
Gov't Code Ann. § 2001.001-.902 (West 1994). (2)



THE CONTROVERSY


 Gulf States erected a new power-generating facility, the River Bend Nuclear
Generating Station, and initiated in the Commission a contested case seeking the agency's
adjudication regarding what portion of its total construction costs the utility might include in its
rate base as being a "prudent" investment. (3) The Commission consolidated that proceeding with
a rate case Gulf States had filed in the agency. The consolidated case is now before us following
the Commission's final order and the district court's judgment on judicial review of that order.

 The Commission determined in its final order that Gulf States was entitled to
include in its rate base $2.273 billion of its construction costs on the River Bend project, that
being the portion of total costs meeting the criterion of a prudent investment. The Commission's
final order also declared, however, that the agency would not presently decide whether an
additional $1.453 billion met the criterion of a prudent investment; rather, the Commission would
defer that question for decision on motion for rehearing or in a subsequent agency proceeding.

 Various parties filed their motions for rehearing in the Commission. See APA
§ 2001.145. These were overruled by operation of law. Several parties then sued in district
court, as authorized by PURA section 69, seeking direct judicial review of the Commission's final
order. Concurrently, Gulf States filed in the Commission a new contested case to obtain the
deferred adjudication mentioned by the agency in its final order--an adjudication regarding what
part of the $1.453 billion, if any, met the criterion of a prudent investment.



COLLATERAL ATTACK


 Almost before direct judicial review began, the Office of Public Utility Counsel and
twelve municipalities sued the Commission in district court in a cause independent of the various
suits for judicial review brought under PURA section 69. These plaintiffs prayed for declaratory
judgment that the Commission lacked the power to adjudicate in a separate contested case the
prudence of the $1.453 billion expenditure which had already been considered in this proceeding. 
An action taken by an administrative agency in excess of its statutory powers is the well-recognized exception to the general rule that an agency's final order, like the final judgment in
a court of justice, is immune from collateral attack. (4) Westheimer Indep. Sch. Dist. v. Brockette,
567 S.W.2d 780, 785-87 (Tex. 1978). Ancillary to their suit for declaratory relief, these plaintiffs
requested a permanent injunction restraining the Commission from conducting any further
proceedings to adjudicate the prudence of the $1.453 billion expenditure. The district court
granted the permanent injunction after trial. (5)

 The plaintiffs ultimately prevailed in their collateral attack upon that part of the
Commission's order which purported to defer until a subsequent proceeding an adjudication
regarding the $1.453 billion. Coalition of Cities for Affordable Util. Rates v. Public Util.
Comm'n, 798 S.W.2d 560 (Tex. 1990), cert. denied, 499 U.S. 983 (1991). The parties'
competing arguments in the present appeal rest largely upon their conflicting interpretations of the
supreme court's opinion in Coalition of Cities. We should therefore address that opinion before
proceeding further.

 In Coalition of Cities, the supreme court gave the following rationale in sustaining
the plaintiffs' collateral attack:

 1.  The Commission's order in the rate case consolidating docket numbers 7195
and 6755 constituted a final adjudication of the amount of River Bend capital costs prudently and
reasonably incurred; that amount excluded $1.453 billion because Gulf States had failed to bear
its burden of proof as to the prudence of those expenditures. (6)

 2.  The Commission lacked the statutory power to revisit its determination
concerning the prudence of the $1.453 billion expenditure. (7)

 3.  Therefore, the Commission exceeded its statutory power in concluding that it
could reexamine in a future agency proceeding the prudence of the costs on which Gulf States had
failed to bear its burden of proof--the $1.453 billion expenditure. (8)

 4.  All parties had a legal right to a straightforward adjudication, in the original rate
case, regarding the prudence of the $1.453 billion expenditure. (9)

 5.  By its decision in the collateral attack, the supreme court did not intend to bar
Gulf States' legal right to a fair adjudication of the prudence issue or to restrict the scope of
judicial review of that adjudication. (10)

 Upon this reasoning, the supreme court reversed the judgment of this Court and
affirmed the district court's order that permanently restrained the Commission from proceeding
to a decision in the new contested case initiated by Gulf States. To underscore the importance of
the Coalition of Cities opinion to the outcome of this appeal, we note that the dissent arrives at
its result based on its contradictory reading of that decision. The dissent insists that the prudence
of the $1.453 billion of construction costs has never been finally adjudicated. Gulf States Utils.
Co. v. Coalition of Cities for Affordable Util. Rates, No. 3-92-046-CV, slip op. at 3 (Tex.
App.--Austin May 25, 1994, no writ h.) (Powers, J., dissenting). This view was the basis for our
earlier decision in Coalition of Cities; we reversed the trial court's injunction, holding that the
principles of res judicata were inapplicable because the Commission, by deferring its
consideration, had never finally adjudicated the prudence of the $1.453 billion. Public Util.
Comm'n v. Coalition of Cities for Affordable Util. Rates, 777 S.W.2d 814, 817 (Tex. App--Austin
1989), rev'd, Coalition of Cities for Affordable Util. Rates, 798 S.W.2d 560 (Tex. 1990). The
supreme court reversed, basing its decision on the principles of res judicata. As both courts
recognized, res judicata principles would not apply unless there had been a final adjudication
concerning the $1.453 billion. Coalition of Cities, 798 S.W.2d at 564. There can be no dispute:
the supreme court held that the matter has been finally adjudicated by the Commission. "More
importantly, the PUC order must be considered final unless the PUC has statutory power to defer
and reconsider." Id. The supreme court then ruled that the Commission exceeded its statutory
authority in attempting to postpone its decision, and concluded, "Once the order in the initial
docket became final, it was not subject to any further PUC review." Id. at 565. The dissent
dismisses this language as mere dicta, ignoring that the finality of the Commission's adjudication
was the very basis for the trial court's injunction and the supreme court's final ruling in Coalition
of Cities, notwithstanding our intermediate decision holding otherwise. To insist now that this
Court was right and the supreme court was wrong is to flaunt the authority of the high court to
whose decisions we are obliged to defer. 


THE DISTRICT-COURT JUDGMENT


 Being thus advised by the supreme court's judgment in Coalition of Cities, the
district court, in reviewing the agency's action in the original rate case, (1) reversed the
Commission's final order on an unstated ground, and (2) remanded the rate case to the
Commission with an instruction directing the agency to "exclude from rate base the relevant
statutory-law expenses" and another instruction forbidding the agency to "reduce rate base by
$1.50 for each $1.00 of interim rate revenues collected." We have not yet discussed these two
instructions. They pertain to issues raised in the appeals taken by the Commission and the Office
of Public Utility Counsel. For the present, we need only note that the instructions impliedly
exclude from the Commission's consideration, on remand, any reexamination of the record. See
State v. Mauritz-Wells Co., 175 S.W.2d 238, 241 (Tex. 1943) ("It is a settled rule that the express
mention or enumeration of one person, thing, consequence, or class is equivalent to an express
exclusion of all others.").




DISCUSSION AND HOLDINGS


I.


 In points of error one and two, Gulf States in effect complains that the district-court
judgment, by limiting the scope of the remand to the Commission, permanently denies the utility
an agency adjudication regarding what part of the $1.453 billion, if any, constituted a prudent
investment that could be included in the utility's rate base. Under these two broad assignments
of error, Gulf States marshals four distinct arguments as to why the district court's judgment
cannot stand: (1) the disallowance of the $1.453 billion prevents the Commission from fulfilling
its statutory duty to balance consumer and utility interests, and to set just and reasonable rates;
(2) the district court erroneously refused to remand the cause to the Commission to take additional
evidence under APA section 2001.175(c); (3) the disallowance results in confiscation and violates
Gulf States' due-process rights; and (4) the Commission's erroneous conclusion of law 10, in
which it purported to have authority to reexamine its prudence determination in a subsequent
proceeding, "irreparably tainted" the Commission's entire final order. We will address these
contentions in turn. 



A.  Balancing Consumer and Utility Interests

 Gulf States argues that because PURA requires the Commission to set rates that are
just and reasonable to consumers and to utilities, see PURA §§ 2, 38, the Commission exercises
the discretion to balance the interests of these groups when setting rates. Gulf States further
alleges that, by attempting to reexamine the prudence of the $1.453 billion, the Commission was
fulfilling its duty to balance these interests in a rate-making proceeding. From these premises,
Gulf States draws the conclusion that the Commission must be given an opportunity to strike the
balance that, but for its error of law, it would have struck in the second rate-making proceeding. 
We reject this contention. PURA ensures that the Commission's discretion to balance consumer
and utility interests is not unbridled, but rather restricted by specific mandates. See, e.g., PURA
§ 41 (dictating precisely how Commission must compute certain components of rate base); id. §
41(c)(3) (defining certain categories of expenses wholly excluded from recovery through rates). 
Moreover, the nature of the process by which rates are set largely determines the extent of the
Commission's discretion to balance the interests of utilities and consumers. Ratemaking occurs
through the mechanism of an adjudicative hearing. See APA § 2001.003(1). In any proceeding
involving a change in rates, the utility has the burden to prove the prudence and reasonableness
of its expenditures before the Commission may approve the rate increase. PURA § 40; Coalition
of Cities, 798 S.W.2d at 563; Public Util. Comm'n v. Houston Lighting & Power Co., 778
S.W.2d 195, 198 (Tex. App.--Austin 1989, no writ). The supreme court has succinctly stated one
result attending the allocation of that burden: "A party who fails to meet its burden of proof
loses. The party who has the burden but fails to persuade the trier of fact is not entitled to a
second trial to present more evidence." Coalition of Cities, 798 S.W.2d at 563-64. This
quotation reveals that the Commission's duty as fact-finder carries no correlative power to strike
a balance, as to the setting of rates, unsupported by a utility's persuasive record evidence. See
Jersey Central Power & Light Co. v. Federal Energy Regulatory Comm'n, 810 F.2d 1168, 1180
(D.C. Cir. 1987) (holding that balancing must be based on factual findings). (11)



B.  Remand Under APA Section 2001.175(c)

 Gulf States further complains that the district court improperly denied its request
to present additional evidence before the Commission pursuant to APA section 2001.175(c). Such
a remand is justified when the additional evidence to be adduced is material and good cause exists
for the requesting party's failure to present the evidence in the agency proceeding. APA §
2001.175(c); Buttes Resources Co. v. Railroad Comm'n, 732 S.W.2d 675, 680 (Tex.
App.--Houston [14th Dist.] 1987, writ ref'd n.r.e.). The district court's decision to grant or deny
a remand request will be reviewed for an abuse of discretion. Buttes Resources, 732 S.W.2d at
680. Gulf States presents two arguments in support of its position that a remand is warranted in
this case.

 First, Gulf States argues that the Commission should be permitted to receive
evidence concerning the effects of the supreme court's determination in Coalition of Cities that
the agency had no power to reexamine its implicit final adjudication of the prudence issue. Gulf
States cites Independence Savings & Loan Association v. Gonzales County Savings & Loan
Association for the proposition that a remand may properly be granted to allow an agency to
consider how another adjudicative body's decision affects its own final order. See 568 S.W.2d
463, 465 (Tex. Civ. App.--Austin 1978, writ ref'd n.r.e.). In Independence Savings, a savings
and loan association challenged a state agency's approval of a competitor's branch office
application. The challenger sought, and the trial court granted, a remand so that the agency could
consider a federal agency's intervening final order approving a federal savings and loan branch
application for the same area. The approval of the federal branch directly affected the body of
evidence underlying a fact finding upon which the approval of the state application turned--whether
the new branch office was necessary to foster competition. See id. In this case, by contrast, the
Coalition of Cities decision did nothing to alter or augment, either directly or indirectly, the
historical investment data underlying the Commission's prudence determination, nor did it modify
the standard by which the Commission reviews that historical data. Consequently, the supreme
court's decision could not have affected the Commission's findings derived from that evidence. 
We therefore reject Gulf States' position that the issuance of the Coalition of Cities decision
presents a basis for a remand to the Commission.

 As a second justification for its requested remand, Gulf States avers that it should
be allowed to present additional evidence to prove the prudence of expenditures above $2.273
billion because the Commission in effect imposed a new and different standard of proof after the
close of the evidence. According to Gulf States, the Commission required the utility to prove the
prudence of expenses to be included in rate base by means of a detailed cost-reconciliation study. 
Gulf States maintains that because the Commission's evidentiary requirement was completely
unprecedented, Gulf States had good cause for failing to present the cost reconciliation study to
the Commission in the first instance.

 Gulf States relies on an opinion of this Court upholding a remand when the
requesting utility did not know in advance and could not reasonably anticipate the time period for
which it could recover prudently incurred costs. See Public Util. Comm'n v. Houston Lighting
& Power Co., 715 S.W.2d 98, 105 (Tex. App.--Austin 1986), aff'd in part & rev'd in part on
other grounds, 748 S.W.2d 439 (Tex. 1987), appeal dism'd, 488 U.S. 805 (1988) (HL&P). Gulf
States tries to bring itself within the holding of HL&P by the bare allegation that the Commission
in this cause had never before required such a rigorous reconciliation of costs in order to
determine the prudence of expenditures. Gulf States has provided us no way to test the accuracy
of this contention. However, even assuming the verity of Gulf States' allegation, we believe
HL&P is distinguishable.

 Unlike the utility in HL&P, Gulf States was fully aware of those costs the prudence
of which it would have to justify in order to include them in its rate base. Gulf States failed to
present evidence sufficient to persuade the Commission that those costs were prudent, even though
it knew in advance that its success would turn on the probative force of its evidence. We think
this situation analogous to that presented in Texas Oil & Gas Corp. v. Railroad Commission, 575
S.W.2d 348 (Tex. Civ. App.--Austin 1978, no writ). There, the appellant sought a remand to the
agency to introduce seismic data that was material to the dispute, but which the court found had
been available during the original agency proceedings. The court rejected the appellant's
argument that, because it mistakenly believed certain evidence would be unnecessary to contradict
its opponent's evidence, it had good cause for failing to present that evidence. The court flatly
rejected the contention that errors in judgment made by a party during the agency hearing
constitute good cause for ordering the agency to consider additional evidence. Id. at 352.

 The agency record in the instant case reflects that Gulf States had a full and fair
opportunity to present all the historical facts necessary to justify the prudence of its expenditures. 
That the fact-finder found a substantial portion of Gulf States' evidence unpersuasive does not of
itself warrant a remand. The agency is the sole judge of the weight to be accorded the evidence
presented before it. See Southern Union Gas Co. v. Railroad Comm'n, 692 S.W.2d 137, 141
(Tex. App.--Austin 1985, writ ref'd n.r.e.). The litigant must bear the consequences for failing
to marshal the most persuasive case possible. Consequently, we cannot conclude that the district
court in this case abused its discretion in refusing to grant a remand under APA section
2001.175(c).



C.  Confiscation and Violation of Due Process

 Gulf States further maintains that the disallowance of $1.453 billion results in an
unconstitutional confiscation and violation of its due-process rights. Gulf States correctly observes
that a regulated utility dedicates its property to public service and thus is constitutionally entitled
to a fair return on its investment. Duquesne Light Co. v. Barasch, 488 U.S. 299 (1989); Federal
Power Comm'n v. Hope Natural Gas Co., 320 U.S. 591 (1944). To pass constitutional muster,
the overall result of a rate order must be just and reasonable. Duquesne, 488 U.S. at 307-08;
Hope, 320 U.S. at 602.

 Relying on these authorities, Gulf States asserts that a disallowance of $1.453
billion is neither just nor reasonable, and, therefore, the rate the Commission set is confiscatory. 
As we have previously discussed, Gulf States overlooks the procedural context in which rates are
set--a contested hearing in which the utility bears the burden of proof. A utility is unquestionably
entitled to recover rates that will enable it to operate successfully, to maintain its financial
integrity, to attract capital, and to compensate investors for the risk assumed. However, the
utility's fiscal security is assured only through proof that it has prudently invested those monies
that it seeks to recover from the public. Absent persuasive evidence of the prudence of a utility's
expenditures, the Commission may not calculate a rate intended to provide the utility a "fair"
return on its property and investment. Rather, the determination of just and reasonable rates is
wholly dependent upon findings of fact derived from evidence presented in a contested-case
hearing.

 The dissent argues that due process guarantees Gulf States a decision on the
prudence of the $1.453 billion in costs. We conclude, as the supreme court held in Coalition of
Cities, that the prudence of these costs has been finally adjudicated. Due process requires no
more. At bottom, Gulf States maintains that the paramount importance of providing the utility
a fair return on its property and investment overrides all countervailing considerations, including
the requirement that the utility bear the burden to show the prudence of the expenditures it would
recover through rates. We reject this position. To hold otherwise would be tantamount to
allowing the utility to ignore the administrative process the legislature established for the purpose
of setting rates.



D.  The "Irreparable Taint"

 A reviewing court must reverse or remand a contested case for further proceedings
"if substantial rights of the appellant have been prejudiced because the administrative findings,
inferences, conclusions, or decisions are affected by other error of law." APA § 2001.174(2)(D). 
To prevail on its challenge of the Commission's order, Gulf States must show that its substantial
rights have been prejudiced by the agency's error of law. To meet this burden, Gulf States argues
that the Commission's attempt to postpone its consideration of the $1.453 billion, based on the
erroneous assumption that it could revisit the prudence inquiry, precluded the agency from
reaching a correct result in the original rate proceeding. In so arguing, the utility ignores the fact-finding mission of the administrative agency and how those findings serve the process of judicial
review. The supreme court has noted the purposes served by administrative findings of fact:



One purpose no doubt is to restrain any disposition on the part of the [agency] . . .
without a full consideration of the evidence and a serious appraisal of the facts. 
Another is to inform protestants of the facts found so that they may intelligently
prepare and present an appeal to the courts. Still another is to assist the courts in
properly exercising their function of reviewing the order.



Miller v. Railroad Comm'n, 363 S.W.2d 244, 245-46 (Tex. 1962). The agency must articulate
findings that support its conclusions of law. The reviewing court tests the agency's conclusions
to determine whether they are reasonably supported by the findings and by substantial evidence
in view of the reliable and probative evidence in the record as a whole. Texas Health Facilities
Comm'n v. Charter Medical-Dallas, Inc., 665 S.W.2d 446, 452 (Tex. 1984). Gulf States would
have us invert this process by holding that an erroneous conclusion undermines the validity of the
agency's fact-finding, irrespective of the record evidence.

 Gulf States suggests that the Commission would have altered its findings of facts
based on the evidence presented had it known it could not grant the utility a second chance to
present more persuasive evidence. However, the Commission is not permitted to determine a just
and reasonable rate and then "back into" the required findings of fact. A basic purpose of
requiring findings of fact is to ensure that an agency's decision comes after, not before, a careful
consideration of the evidence. Agency conclusions should follow from its serious appraisal of the
facts. Gulf States here suggests that if the Commission had known its decision would be final,
it would have reshaped its findings of fact to "back into" a decision more favorable to the utility. 
We reject this cynical view of the administrative process.

 In conclusion of law 18, the Commission held that $1.453 billion of River Bend
capital costs should not be included in Gulf States' rate base. In conclusion of law 18A, the
Commission found that "GSU [Gulf States] has not met its burden of proof that the capital costs
of River Bend above a reasonable Definition Cost Estimate of $2.273 billion were reasonably and
prudently incurred." The following underlying findings of fact reflect the Commission's
evaluation of the evidence Gulf States presented in support of the prudence of the $1.453 billion
increase in plant costs.



121.  The Increment Estimate File (IEF) was primarily a cost tracking and
accounting tool and was not designed to provide a detailed justification of cost
increases.


122.  The fact that GSU had a legitimate process for reviewing and approving
changes in project costs does not show that those costs were reasonable.


124.  The PLG Report's Analysis of the reasons for growth in the cost of River
Bend was cursory and inadequate.


125.  PLG has cited low cost per Kw as an indication of prudent management and
a key measure of management performance in other proceedings. The absence of
a cost-per-Kw comparison in this case damaged the credibility of the PLG report.


131.  GSU could have developed a far more complete and accurate investigation
of the reasons for the growth in River Bend costs.


132.  GSU's non-statistical explanations of the reasons for the high capital cost of
River Bend were inadequate and unconvincing.


162.  The fact that River Bend's costs are within a 90 or 95 percent statistical
confidence interval does not explain or justify the high cost of the plant.


163.  The Statistical Analyses presented in this docket were inadequate to prove
the reasonableness or prudence of River Bend construction costs.



 Gulf States elected not to present any cost-per-kilowatt analyses of River Bend's
cost growth. (12) Instead it relied on (1) statistical evidence that the Commission found "inadequate";
(2) non-statistical evidence, the Incremental Estimate File ("IEF"), which the Commission found
"inadequate and unconvincing"; and (3) the PLG Report, which was not credible without a cost-per-kilowatt comparison.

 Having found that Gulf States could have developed a more complete and accurate
explanation for the cost increases at River Bend, the Commission erroneously attempted to afford
the utility a second chance to do so. The Commission's effort exceeded its statutory authority. 
Coalition of Cities, 798 S.W.2d at 564. But this error cannot have tainted the Commission's basic
findings that Gulf States' statistical and non-statistical evidence was inadequate and unconvincing
unless the facts are appraised after an agency reaches its conclusions rather than before. 

 Returning to the basis for this point of error, Gulf States must show that the harm
it suffered, the exclusion of $1.453 billion in costs from rate base, was caused by the
Commission's erroneous conclusion that it could reexamine the prudence of those expenditures. 
The Commission's error was affording Gulf States a second chance to present persuasive evidence
that its expenditures were prudent and reasonable. However, a second chance to present evidence
is not a "substantial right" utilities may claim. Id. at 565. There can be no harm done to a
substantial right that never existed. Failure to succeed is not a recognized ground for a rehearing. 
The harm complained of in this appeal, exclusion of $1.453 billion from rate base, resulted from
the unpersuasiveness of the evidence Gulf States chose to present to the Commission in the single
proceeding to which it was legally entitled. 

 Although the Commission may have intended to reevaluate the prudence of the
$1.453 billion in cost increases at a later date, it also intended to disallow those costs based on
the record evidence presented in this proceeding. See Conclusion of Law 18. This was the only
conclusion it could make based on its findings that Gulf States' evidence was not persuasive. Gulf
States argues that the Commission might have granted its motion for rehearing had it known it
could not revisit the prudence of the excluded costs in a future proceeding. We reject this basis
for a remand because the individual commissioner's thought processes are immaterial to judicial
review. We judge the agency order on the basis on which it purports to rest. Pedernales Elec.
Coop., Inc. v. Public Util. Comm'n, 809 S.W.2d 332, 341-42 (Tex. App.--Austin 1991, no writ). 
We affirm the district court's ruling that no causal link exists between the Commission's error of
law and the harm the utility has suffered by the exclusion of substantial dollars from rate base. 
See United States v. Morgan, 313 U.S. 409, 418-20 (1941); Texas State Bd. of Examiners in
Optometry v. Carp, 388 S.W.2d 409, 416 (Tex. 1965).

 Having rejected all four arguments that Gulf States asserts under points of error one
and two, we overrule those points.



II.


 Some appellees argue that Gulf States waived its complaint regarding the agency's
adjudication that expending $1.453 billion for construction costs on the River Bend project was
not prudent. The waiver results, they contend, from the fact that Gulf States did not assign error
to the deferral of this prudence determination in its motion for rehearing, filed in the Commission
pursuant to APA section 2001.145. Waiver is, of course, the ordinary consequence when a
complaining party fails to preserve its complaint by a proper assignment of error contained in its
motion for rehearing filed in the agency. See Lindsay v. Sterling, 690 S.W.2d 560, 563 (Tex.
1985).

 The motion-for-rehearing requirement of APA section 2001.145 rests on the
principle that an administrative agency should have an opportunity to correct its own errors if the
relations between reviewing courts and agencies are to be orderly and if the agencies are to
exercise effectively their delegated powers of administration. Absent such an opportunity, the
agencies would become mere recorders of evidence and the power of administration would
effectively be transferred in large part to the courts. See 2 Frank E. Cooper, State Administrative
Law 559-602 (1965). Consequently, the general rule is that a party must ordinarily preserve its
claim of error by first raising it in the agency; conversely, a party may not raise it for the first
time on judicial review of the agency order. The requirement is not without exception. Questions
of law, for example, may be raised for the first time in a reviewing court when necessary to
prevent an injustice. Hormel v. Helvering, 312 U.S. 551, 556-57 (1946). This may occur, for
example, when the highest court in a jurisdiction gives its decision on an applicable question of
law after the agency has rendered its final order and the case is pending on judicial review. 
Hormel, 312 U.S. at 558-59. Or other circumstances may arise after the agency renders its order,
affecting its enforcement, which will allow a party to raise the matter for the first time on judicial
review. National Labor Relations Bd. v. Jones & Laughlin Steel Corp., 331 U.S. 416, 428
(1946).

 We believe such an exceptional case exists here. By the terms of its final order,
with its findings of fact and conclusions of law, the Commission purported to defer the prudence
adjudication as to the $1.453 billion in cost growth above the adjusted definitive cost estimate
("DCE"). Because, at the time, it appeared the Commission's final order would not permanently
foreclose a decision on the issue, it is difficult to see how Gulf States could view itself as
prejudiced by this aspect of the agency decision and be required to complain of it in a motion for
rehearing. As it turned out, of course, the Commission lacked the statutory power to postpone
its decision until a future contested case. But this question of law was not determined by the
supreme court until long afterward in Coalition of Cities. Shall waiver now be interposed, in
these circumstances, to prevent Gulf States from challenging an agency adjudication of a critical
issue in the only contested case in which it may permissibly be decided? We believe such a
holding would be manifestly unjust under the circumstances. See Hormel, 312 U.S. at 558-59. 
Concluding that Gulf States did not waive its legal right to complain of the disallowance effected
by the Commission's final order, we now address the utility's complaint that the disallowance was
not supported by substantial evidence.



III.


 In its third point of error, Gulf States complains that the Commission's order is
arbitrary and capricious and unsupported by substantial evidence. See APA § 2001.174(2)(E),
(F); Charter Medical, 665 S.W.2d at 452-53.

 In disposing of this point, we observe initially that Gulf States' efforts to obtain rate
recognition of its overall investment in the River Bend project presented for the Commission's
determination two distinct inquiries: first, whether Gulf States' decision to resume the project
following a construction hiatus was prudent at the time the decision was made in 1979; and
second, what portion, if any, of the extensive cost growth beyond the projected completion costs
was prudently incurred? To satisfy these inquiries, Gulf States relied upon both statistical and
non-statistical evidence. A cost tracking report called the Incremental Estimate File ("IEF") and
testimony explaining it constituted Gulf States' principal non-statistical evidence; cost comparisons
with other nuclear power plants constructed at the same time as River Bend were the focus of its
statistical evidence. Gulf States chose not to present any cost-per-kilowatt data on the plant.

 With regard to the first inquiry, the Commission determined that Gulf States'
decision to restart and complete construction of the River Bend project was prudent. In reaching
this conclusion, the Commission reviewed Gulf States' 1979 DCE, the utility's projected total cost
for completing River Bend. The Commission concluded, however, that Gulf States' DCE was
too low. Based on evidence from the various parties, the Commission decided that Gulf States
had failed to consider foreseeable expenses, like those attending the more rigorous nuclear
regulatory climate in the aftermath of Three Mile Island. The Commission also found that Gulf
States' fifty-month completion schedule was overly ambitious and that a sixty-month projection
would have been more realistic. From these various indicators of expenses foreseeable in 1979,
the Commission adjusted the DCE upward to $2.273 billion, (13) and determined that from a 1979
perspective, the decision to go forward with foreseeable construction costs of $2.273 billion was
prudent. 

 With regard to the second inquiry, the determination of what portion of actual
construction costs was reasonably and prudently incurred, the Commission began with the adjusted
DCE figure of $2.273 billion and found that these projected costs were prudent. Finding of Fact
164. The Commission then examined the evidence presented to determine what portion, if any,
of the $1.453 billion actual cost growth above the adjusted DCE had been prudently incurred. 
The Commission did not find the evidence persuasive to justify including any of the $1.453 billion
in rate base. Finding of Fact 164A, Conclusions of Law 18, 18A. In its third point of error, Gulf
States raises a number of arguments to show that the Commission's refusal to be persuaded was
arbitrary and capricious and unsupported by substantial evidence--in short, that the final order is
unreasonable when considered in light of the entire record.

 Gulf States' principal contention is that, because no party ever advocated a
disallowance as large as that which actually occurred, the Commission had no basis for
disallowing the entire $1.453 billion. This argument turns on the assumption that a utility's
expenditures are presumed prudent unless shown to be otherwise. Both PURA and case law
reflect the fallacy of this position. See PURA § 40 (utility bears burden to show prudence of
expenditures to be included in rates); see also Coalition of Cities, 798 S.W.2d at 563 (utility
enjoys no presumption that its expenditures were prudently incurred); Public Util. Comm'n v.
Houston Lighting & Power Co., 778 S.W.2d at 198 (to raise rates, utility must bear burden of
proving that each dollar of cost incurred was reasonably and prudently invested). These
authorities indicate that the failure by parties challenging a rate increase to seek a total
disallowance does not, ipso facto, render the unchallenged expenditures prudent. A utility may
not rely on such burden-shifting to make its prudence case. "A utility has the burden to prove the
prudence and reasonableness of its expenditures before a rate increase can be approved." 
Coalition of Cities, 798 S.W.2d at 563. The Commission determined that Gulf States did not
meet its burden of demonstrating that any of the cost growth was prudently incurred and therefore
the $1.453 billion in costs above the adjusted DCE should not be included in rate base. See
Conclusions of Law 18, 18A. If there is any evidence supporting either an affirmative or a
negative finding, we must uphold the agency decision. Charter Medical, 665 S.W.2d at 453. To prevail on this point of error, Gulf States must show that reasonable minds
could not have reached the conclusion the Commission reached. Texas State Bd. of Dental
Examiners v. Sizemore, 759 S.W.2d 114, 116 (Tex. 1988). The Commission's conclusion that
the utility did not meet its burden of proving the prudence of its $1.453 billion in costs is
comparable to a jury's failure to find an issue. See Pedernales Elec. Coop., 809 S.W.2d at 337. 
A jury's failure to find need not be supported by any evidence, but may not stand in the face of
overwhelming evidence of the fact's existence. Schmeltekoph v. Johnson Well Serv., 810 S.W.2d
865, 869 (Tex. App.--Austin 1991, no writ). In conducting a substantial evidence review of an
agency's failure to find, we must uphold the agency's order if substantial evidence in the record
would support either affirmative or negative findings. Charter Medical, 665 S.W.2d at 453. An
agency's negative findings will be sustained unless the evidence conclusively requires affirmative
findings. Gerst v. Goldsbury, 434 S.W.2d 665, 667 (Tex. 1968). When the evidence is
contradictory, we resolve any conflict in favor of the agency's decision. Auto Convoy Co. v.
Railroad Comm'n, 507 S.W.2d 718, 722 (Tex. 1974). Even when the reviewing court may have
struck a different balance, it may not substitute its judgment for that of the agency. Sizemore, 759
S.W.2d at 116. The burden is on Gulf States to demonstrate from the evidence that it
conclusively established the prudence of the $1.453 billion expended. Charter Medical, 665
S.W.2d at 453. Here, the findings of fact and the record evidence adequately support the
Commission's conclusion that the utility failed to meet its burden of proof.

 In its report, the Examiner explained that "it was up to GSU, not the intervenors,
to justify these costs . . . [to] explain why River Bend is the fifth most expensive plant, per KW,
in the United States." Examiner's Report at 128. After all the evidence had been presented, the
Examiner reported, "GSU doesn't know why River Bend cost so much." Id. The Examiner and
the Commission found the utility's non-statistical evidence, principally the IEF report, "inadequate
and unconvincing." Finding of Fact 132. The Examiner found that Gulf States' statistical
evidence showing the River Bend costs to be within a 90 or 95 percent confidence range did not
explain or justify the high cost of the plant. Proposed Finding of Fact 162. The Examiner and
the Commission agreed Gulf States "could have developed a far more complete and accurate
investigation of the reasons for the growth in River Bend costs." Finding of Fact 131. 

 The Examiner reluctantly relied on Gulf States' statistical evidence to include a
large portion of the increased costs in rate base. Its finding of fact 163 states: "[A]lthough
statistical analysis is an imprecise measure, it is the best one offered in the proceeding." The
Commission disagreed and found that Gulf States' best evidence was not good enough. The
Commission's finding of fact 163 states, "The statistical analyses presented in this docket were
inadequate to prove the reasonableness or prudence of River Bend construction costs." In
weighing the credibility of the evidence, the Commission was performing its proper function. 
City of El Paso v. Public Util. Comm'n, 839 S.W.2d 895 (Tex. App.--Austin 1992, writ granted). 
The APA section 2001.174 forbids this Court from usurping the agency's adjudicative authority. 
Charter Medical, 665 S.W.2d at 452; Sizemore, 759 S.W.2d at 117. Gulf States also complains,
in essence, that the Commission failed to consider testimony of certain witnesses and failed to
credit evidence that the hearing examiners found persuasive. In response, we observe that an
agency may or may not accept witnesses' testimony; the agency, not the reviewing court, is the
judge of the weight to be accorded that testimony. Southern Union Gas Co., 692 S.W.2d at 141. 
Hence, we may not reverse the Commission's determination that Gulf States' evidence was too
superficial or otherwise unpersuasive to quantify prudent expenditures associated with cost
growth. Taken together, the findings of fact and the record evidence provide a reasonable basis
for the Commission's conclusion that Gulf States failed to establish the prudence of River Bend's
construction costs in excess of $2.273 billion. We overrule the third point of error. 

 We note the dissent comes to a different conclusion by limiting the utility's burden
to going forward with evidence of prudence while shifting the burden of persuasion to the party
seeking to establish that a utility's expenditures are imprudent. Gulf States Utils. Co v. Coalition
of Cities for Affordable Utility Rates, No. 3-92-046-CV, slip op. at 4 (Tex. App.--Austin May 25,
1994) (Powers, J., dissenting). Our supreme court has rejected this contention: "A party who
fails to meet its burden of proof loses. The party who has the burden but fails to persuade the
trier of fact is not entitled to a second trial to present more evidence." Coalition of Cities, 798
S.W.2d at 563-64. In an earlier decision in which the dissenting justice joined, this Court
likewise rejected the burden shifting now advocated by the dissent: 



We understand Gulf States to mean that once it offered evidence that its decision
would benefit its ratepayers, it had satisfied its burden of proof, which then shifted
to either the Commission or the intervenors to show the availability of a `distinctly
superior alternative' to the decision taken. We find no basis in either PURA § 40
or the caselaw construing it for such burden shifting.



Gulf States Utils. Co. v. Public Util. Comm'n, 841 S.W.2d 459, 476 (Tex. App.--Austin 1992,
writ denied). It is too late to argue that in a ratemaking proceeding in Texas the burden of
persuasion does not fall squarely on the utility claiming the prudence of its expenditures. The
supreme court's ruling in Coalition of Cities cannot be ignored by labeling it dicta. See also
Texas-New Mexico Power Co. v. Texas Industr. Energy Consumers, 806 S.W.2d 230, 233 (Tex.
1991); City of Somerville v. Public Util. Comm'n, 865 S.W.2d 557, 563 n.17 (Tex. App.--Austin
1993, no writ); Cities of Abilene v. Public Util. Comm'n, 854 S.W.2d 932, 940-41 (Tex.
App.--Austin 1993, writ requested) (adopting the proposition that the utility did not carry its
burden of proof by merely "opening its books to inspection").


IV.


 In its final order, the Commission permitted Gulf States to include in its rate base
certain deferred expenses associated with River Bend that the utility had accrued from the time
the new facility was placed in operation through December 1987. In its fourth point of error,
Gulf States assails the district court's reversal of this decision; the Commission, as appellant,
urges the same challenge in its first point of error. The matter of these deferred expenses
originally arose in an earlier rate proceeding, PUC Docket No. 6525, filed in late 1985. The
parties to that proceeding, the same as those now before us in this appeal, entered into a
stipulation settling that case, which the Commission approved by written order in June 1986. (14) 
All parties agreed that various costs associated with River Bend and a coal powered generating
plant, Big Cajun 2, Unit 3, would be accrued and deferred until Gulf States' next rate case. The
proceeding underlying this appeal was Gulf States' next rate case.

 In reversing the Commission's inclusion of deferred expenses in rate base, the
district court relied on this Court's original opinion in City of El Paso v. Public Utility
Commission. In our original opinion in City of El Paso, we concluded that PURA section 41(a)
forbade inclusion in rate base of any deferred expenses associated with a newly constructed plant
accruing after the plant's dedication to public use. However, we withdrew that opinion and
substantially modified City of El Paso on motion for rehearing. City of El Paso, 839 S.W.2d at
901. On rehearing, we held that PURA section 41(a) only precludes inclusion in rate base of
post-in-service carrying costs and does not speak to the question of whether post-in-service
operating and maintenance ("O & M") costs may be included. Id. at 915-16. "Accordingly,
whatever other objections may be made to the inclusion in rate base of post-in-service O & M
costs, such inclusion is not inconsistent with PURA section 41(a)." Id. at 916.

 The district court's judgment reversing the Commission's order is thus at odds with
our modified holding in City of El Paso and cannot stand. Moreover, because the Commission
failed to distinguish in its findings of fact between post-in-service carrying costs and post-in-service O & M costs, we cannot determine what portion of the total deferred expenses added to
Gulf States' rate base were permissibly included. Consequently, we must remand this matter to
the Commission for its reexamination of the deferred-expense-recovery question consistent with
our final decision in City of El Paso. We sustain Gulf States' fourth and the Commission's first
points of error.

 The Commission properly notes that its final order reduces deferred expenses, not
rate base, by $1.50 for every $1.00 in interim rates collected. On remand the Commission must
reassess the deferred-expenses issue and reconsider its interim rate offset against Gulf States'
deferred expenses in light of our decision in City of El Paso. Although both the Commission and
the Office of Public Utility Counsel urge a point of error challenging the district court's reversal
of the interim rate offset against Gulf States' deferred expenses, we do not decide those points of
error at this time. Because we must reverse the Commission's final order and remand the cause
to the agency for reassessment of the entire deferred-expenses issue, (15) we will not anticipate which
issues will or will not survive the Commission's reexamination of the deferred-expense-recovery
question.


V.


 In its fifth point of error, Gulf States complains that the district court erred in
affirming the Commission's treatment of the utility's federal income tax expenses. Applying the
"actual taxes paid" doctrine announced in Public Utility Commission v. Houston Lighting & Power
Co., 748 S.W.2d 439 (Tex. 1987), appeal dism'd, 488 U.S. 805 (1988), and Public Utility
Commission v. GTE-SW, 833 S.W.2d 153 (Tex. App.--Austin 1992, writ granted), the
Commission refused to award Gulf States' shareholders any tax savings associated with the $1.453
billion and therefore reduced the examiners' recommended tax calculation by approximately $30
million.

 Under its fifth point of error, Gulf States urges this Court to reconsider our position
on the actual-taxes-paid doctrine reflected by our decision in GTE-SW. We continue to read
HL&P to require that tax savings flowing from deductions for disallowed expenses be passed on
to rate payers. See GTE-SW, 833 S.W.2d at 168-69. Any changes in this actual-taxes-paid
doctrine must be effected by the supreme court. We overrule Gulf States' fifth point of error.



VI.


 There remains for consideration Gulf States' sixth point of error complaining of
the restrictive remand resulting from the specific instructions the district court gave in its final
judgment. Because we agree that the recovery of deferred expenses is the only issue that requires
the Commission's reconsideration, we hold that the district court properly remanded this cause
to the Commission with limiting instructions. See Public Util. Comm'n v. Gulf States Utils. Co.,
809 S.W.2d 201, 212 (Tex. 1991). We overrule Gulf States' sixth point of error.



CONCLUSION


 We hold that the district court correctly concluded that substantial evidence
supports the Commission's exclusion of $1.453 billion of River Bend construction costs from rate
base. We also affirm the district court's judgment that there is no causal link between the harm
Gulf States suffered in this exclusion and the Commission's erroneous attempt to afford the utility
another opportunity to present more persuasive evidence regarding the prudence of those
expenditures. We agree that the Commission's order must be reversed and remanded for
reconsideration of deferred expenses, but we reform the specific instructions to order the
Commission to reassess the proper recovery of deferred expenses, including the offset of $1.50
from deferred expenses for every $1.00 of interim revenue, in light of this Court's final opinion
in City of El Paso. We modify the district court's judgment and, as modified, it is affirmed.




 

 Bea Ann Smith, Justice

Before Justices Powers, Aboussie, and B. A. Smith

Modified and, as Modified, Affirmed

Filed: May 25, 1994

Publish
1.   The appellees are the municipalities of Huntsville, Conroe, Panorama Village,
Somerville, West Orange, Willis, and Cut And Shoot, under the name "Coalition of Cities
for Affordable Utility Rates"; the municipalities of Beaumont, Bevil Oaks, Bridge City,
China Groves, Nederland, Nome, Orange, Port Arthur, Port Neches, Rose City, Silsbee,
Sour Lake, and Vidor; Big Three Industries, Chevron Chemical Company, E.I. duPont de
Nemours & Co., Firestone Synthetic Rubber & Latex Co., Goodyear Tire & Rubber Co.,
Mobil Chemical Company, Olin Corporation, PD Glycol, Texaco Chemical Company,
Temple-Eastex, Inc., Union Carbide Corporation, and Union Oil Company of California,
under the name "Texas Industrial Energy Consumers"; and North Star Steel of Texas, Inc. 
The Commission and the Office of Public Utility Counsel are also appellees with respect to
certain parts of the trial-court judgment, but they also bring their own appeal from certain
other aspects of the judgment. We will refer to all the foregoing as "appellees" except when
we consider the appeals taken by the Commission and the Office of Public Utility Counsel.
2.   All citations in this opinion are to the current Administrative Procedure Act rather than
the former Administrative Procedure and Texas Register Act because the recent codification
did not substantively change the law. Act of May 4, 1993, 73d Leg., R.S., ch. 268, § 47,
1993 Tex. Gen. Laws 583, 986.
3.   The "prudent investment test" with which we deal in the present appeal is not explicitly
set out in PURA. Cf. PURA 41(a) (construction work in progress). Its origin is well described,
we believe, in the brief furnished us by Coalition of Cities for Affordable Utility Rates:


[T]he "prudent investment test" is subsumed within the traditional ratemaking
principles embodied in PURA, Sections 38, 39 and 41, and that any imprudent
expenditures can and should be disallowed; . . . The source of the prudent
investment test was Justice Brandeis's concurring opinion in Missouri ex rel.
Southwestern Bell Tel. Co. v. Public Service Commission; he stated that "dishonest
or obviously wasteful or imprudent" expenditures could Constitutionally be excluded
from a utility's rate base. 262 U.S. 276 (1927). In one of the seminal cases
applying the prudent test, the New York Appeals Court stated, "It is neither just nor
reasonable for a utility's customers to bear the cost of inefficient management or
poor planning." Long Island Lighting Co. v. Public Service Commission of the State
of New York, 523 N.Y.S.2d 615, 620 (A.D. 3 Dept. 1987).
4.   In PURA § 69, the legislature provided a means for attacking directly the legality of the
Commission's final order in a contested case: "Any party to a proceeding before the commission
is entitled to judicial review under the substantial evidence rule." A suit under this statute is
unknown to the common law. The suit must be brought, within a specified period of time, in a
district court of Travis County, against the Commission as defendant; there is no jury; the record
of agency proceedings must be admitted in evidence; and the court must ordinarily determine from
such record alone whether to award one of two kinds of relief--it may affirm the Commission
decision (in whole or in part) or reverse the Commission decision and remand the case to the
agency for any of six specified errors of law. APA § 2001.171-.176. A suit under PURA § 69,
governed by APA sections 2001.171-.178, is the exclusive method by which a Texas court may
review the legality of actions taken by the Commission, with one exception: A suit for
declaratory or injunctive relief will lie when the Commission acts in excess of its statutory
authority or "jurisdiction." Westheimer Indep. Sch. Dist. v. Brockette, 567 S.W.2d 780, 785-87
(Tex. 1978). Aside from this exception, the Commission's final orders are immune from
collateral attack. See Alamo Express, Inc. v. Union City Transfer, 309 S.W.2d 815, 827 (Tex.
1958); Thompson v. Railroad Comm'n, 240 S.W.2d 759, 763 (Tex. 1951); 2 Frank E. Cooper,
State Administrative Law 631-40 (1965); 2 Am.Jur.2d Administrative Law § 494, at 301 (1962).
5.   The plaintiffs did not sue in Coalition of Cities to set aside the Commission decision and
remand the case to the agency; in other words, they did not sue under PURA § 69 in a direct
attack upon the Commission's final order in the rate case we now review. They sued instead, in
a collateral attack upon that order, for declaratory and injunctive relief that would restrain the
Commission from hearing and adjudicating Gulf State's contested case brought subsequently to
adjudicate the prudence of the $1.453 billion that the Commission purported not to have
adjudicated by the final order in the previous rate case. The plaintiffs contended, as they were
bound to do if their collateral attack was to be successful, that the Commission had exceeded its
statutory power in the rate-case order by attempting to defer final adjudication of the $1.453
billion to a subsequent proceeding, which would constitute a second adjudication of the prudence
of that expenditure.
6.   "`Every factual, legal and policy issue [bearing on the River Bend rate case] was
thoroughly explored and canvassed,' during the . . . hearings that continued for 132
days . . . ." Coalition of Cities, 798 S.W.2d at 561-62. The supreme court further explained:


Because of a "lack of sufficient evidence", the PUC, in its finding 164A, "excluded
from plant in service" all "capital costs in excess of $2.273 billion." A party who
fails to meet its burden of proof loses. The party who has the burden but fails to
persuade the trier of fact is not entitled to a second trial to present more evidence. 
By stating that GSU failed to meet its burden of proof on the prudence of the $1.453
billion, the PUC effectively disallowed that amount from the rate base.


Id. at 563-64 (citations omitted).
7.   [T]he PUC order must be considered final unless the PUC has the statutory power to
defer and reconsider such critical issues. Such was the holding in Sexton v. Mount Olivet
Cemetery Ass'n, [720 S.W.2d 129, 146 (Tex. App.--Austin 1986, writ ref'd n.r.e.)], in
which the Banking Commissioner sought to revisit an issue determined in a prior order
. . . .


Coalition of Cities, 798 S.W.2d at 564 (emphasis added).
8.   The only legislative authorization for PUC reexamination of an earlier determination
concerns the power to revoke or amend a certificate of convenience and necessity under
certain circumstances outlined in PURA section 62(a). . . . Thus, limited by statute and
lacking any inherent power, the PUC was powerless to defer its decision to a future
proceeding.


 . . . .


 Accordingly, we hold that the doctrines of res judicata and collateral estoppel bar a utility
from relitigating before the PUC the prudence of its past investment for inclusion in that
utility's rate base.


Coalition of Cities, 798 S.W.2d at 564, 565.
9.   All parties were entitled to a straightforward decision from the PUC the first time this
case was presented. Permitting relitigation offends the policy reasons supporting the
doctrines of res judicata and collateral estoppel. Both a public utility and consumers
benefit from a final decision about whether cost overruns at a power plant have been
sufficiently justified. With a complex and controversial project like a nuclear power
installation, a utility and its investors need a determination to prevent relitigation of the
same previous investment decision on each occasion that a rate increase is requested. The
same finality that benefits the utility investors can serve the interests of consumers who
know that if a utility is once denied relief because of its failure to prove its case, it may
not return repeatedly on the same facts until the PUC yields.


Coalition of Cities, 798 S.W.2d at 565.
10.   In Coalition of Cities the supreme court stated:


 All issues relating to the merits of the administrative order, including
the prudence of all elements of construction costs, remain to be
addressed by the trial court [in the rate case where] the burden is upon
[Gulf States] to show that the PUC's order is not supported by
substantial evidence. The claim of the dissent that we have at this
point "assess[ed] a $1.453 billion penalty (permanent disallowance) on
GSU," . . . is incorrect.


Coalition of Cities, 798 S.W.2d at 565 n.7 (emphasis added).
11.   See supra note 3.
12. In fact, before entry of a final order, the Commission provided Gulf States with
numerous opportunities to provide evidence to meet its burden of proof. The transcript of
the final order meeting contains the following:


Commissioner Campbell: I guess I would be inclined to give a second bite at the apple
because of the uniqueness. . . . [N]o one likes to see a utility
pushed into bankruptcy. . . . Would the Company rather we
just go on and not consider the remand?


Gulf States' Attorney: If it can't be settled, it's got to be decided.


* * * * *


Commissioner Greytok: Now this Commission is sitting here--I hear Commissioner
Campbell offering you the opportunity--and I think its been
obvious that we're offering all of you the opportunity to do
something for ratepayers to make this whole thing fly. . . . What
I'm hearing is that you don't want that consideration.


* * * * *


Gulf States' Attorney: What I'm saying to you is, I'm not going to tell you anything
but straight what we think. What we think is, a remand isn't
necessary because we met our burden of proof.
13.   The examiners and the Commission derived the adjusted DCE as follows:


$ 1.729 billion Gulf States 1979 DCE


 .183 Amount added to reflect a 60-month rather than a 50-month schedule.


 .100 Amount added to cover cost of certain safety and
TMI-related "backfit" requirements foreseeable in
1979.


 .018 Amount added for specific engineering cost changes
foreseeable in 1979.

 


$ 2.030 billion


 .243 15% of "to-go" costs as of 1979 added as informal
contingency to cover foreseeable changes (e.g., cost
escalation/inflation and TMI-related regulation) and
known but unquantifiable changes (e.g., stricter
piping requirements and ongoing vendor
negotiations).

 


$ 2.273 billion
14. [14]  The stipulation and order entered in Docket No. 6525 provide:


The Commission further reserves the right to consider, and all parties to the rate
case described above shall have the right to raise, the reasonableness, prudence and
appropriate regulatory treatment of any deferred expenses in the rate case in which
rate base treatment for plant is requested.
15.   The topics left for consideration on remand to the Commission, pursuant to the trial
court's judgment, are interrelated and appear to bear ultimately upon deferred expenses
allowed to become part of the Gulf States rate base. They appear to bear as well, at least in
part, upon deferred costs associated with the River Bend project.