INDEPENDENCE SAVINGS AND LOAN ASSOCIATION et al., Appellants,

v.

GONZALES COUNTY SAVINGS AND LOAN ASSOCIATION et al., Appellees.

INDEPENDENCE SAVINGS AND LOAN ASSOCIATION et al., Appellants,

v.

YOAKUM FEDERAL SAVINGS AND LOAN ASSOCIATION, et al., Appellees.

Nos. 12788 to 12790.

Court of Civil Appeals of Texas, Austin.

July 5, 1978.

Rehearing Denied July 26, 1978.

Larry E. Temple, Austin, for Independence Sav. and Loan Assn.

John L. Hill, Atty. Gen., Thomas M. Pollan, Asst. Atty. Gen., Austin, for Sav. and Loan Commissioner.

Barry Bishop, Clark, Thomas, Winters & Shapiro, Austin, for Gonzales County Sav. and Loan Assn.

Dudley D. McCalla, Heath, Davis & McCalla, Austin, for Yoakum Federal Sav. and Loan Assn.

PHILLIPS, Chief Justice.

The organizers of appellant Independent Savings and Loan Association made appli-

cation to the Savings and Loan Commissioner in April of 1976 for a new savings and loan association to be located in Gonzales, Texas. At that time, the home office of Gonzales County Savings and Loan Association, located in Gonzales, Texas, was the only savings and loan facility located in Gonzales County.

In March of 1976, Yoakum Federal Savings and Loan Association had filed an application with the Federal Home Loan Bank of Little Rock for permission to establish a branch office also to be located in Gonzales.

The hearing on appellant's application was held before the Savings and Loan Commissioner on May 26 and 27, 1976. Yoakum Federal filed a letter of protest but did not otherwise participate in the hearing. However, Gonzales County Savings actively participated therein and presented evidence in opposition to the charter application.

On July 7, 1976, the Savings and Loan Commissioner sent a letter to all parties advising them of his intention to approve the charter and asking that an order be prepared for his signature. By order dated July 28, 1976, the Federal Home Loan Bank approved the Gonzales branch office for Yoakum Federal.

Thereafter, Gonzales County Savings and Loan Association brought suit against the Savings and Loan Commissioner contesting the validity of his July 12, 1976 order. Independence intervened in support of the order and Yoakum Federal intervened on the side of plaintiff Gonzales County.

Both Gonzales County and Yoakum Federal made application to the district court pursuant to the provisions of Section 19(d)(2) of the Administrative Procedure and Texas Register Act, Article 6252–13a, § 1 et seq. (A.P.A.) to have the cause remanded to the Commissioner for the taking of additional evidence pertaining to the Yoakum Federal branch approval.

Over the objection of the Commissioner and Independence Savings, the trial court granted the motion and entered an order remanding the cause to the Savings and Loan Commissioner for the purpose of taking evidence relative to the establishment of the Yoakum Federal branch in Gonzales, "and the effect, if any, such branch would have on the establishment of a new charter in light of all attendant circumstances as they affect the statutory issues presented to the Commissioner."

Pursuant to the court's order, additional hearing on the Independence charter application was held before the Savings and Loan Commissioner in the spring of 1977, and the Independence charter applicants and both Gonzales County and Yoakum Federal participated fully in that hearing.

On May 25, 1977, the Commissioner entered a "supplemental order" to his original order which again approved the charter application of Independence. That order and the evidence compiled at the 1977 hearing were filed with the court in accordance with the court's previous order.

Two other lawsuits relating to this same cause of action were filed by Gonzales County and Yoakum Federal and as their procedural history is immaterial here, we will not discuss them further. They were consolidated by this Court with the original lawsuit and will be disposed of here.

The trial court then entered judgment holding "that the orders of the Commissioner entered on July 12, 1976, and May 25, 1977, granting the charter application of Independence Savings and Loan Association in Gonzales, Texas, are invalid; that the two orders and the underlying facts therein are irreconcilable and invalid regardless of substantial evidence; and that the irreconcilability of the underlying facts renders such orders invalid because of the absence of underlying facts, contrary to law; and are not reasonably supported by substantial evidence, and should be set aside and held for naught." The judgment remanded the cause to the Commissioner with direction to deny the charter application.

Appellants then perfected their appeal to this Court. We reverse the judgment of the trial court and render judgment as hereinafter indicated.

## I.

■ Appellants are before us on two main questions. The first is whether the trial court erred in remanding this cause to the Commissioner pursuant to the provisions of Section 19(d)(2) of the Administrative Procedure and Texas Register Act for the taking and consideration of evidence of matters that came into existence after the Commissioner entered his July 12, 1976 order approving appellants' charter. In our opinion, the trial court did not err in remanding this cause.

Section 19(d)(2) provides that:

". . . any party may apply to the court for leave to present additional evidence and the court, if it is satisfied that the additional evidence is *material and that there were good reasons for the failure to present it in the proceeding before the agency,* may order that the additional evidence be taken before the agency on conditions determined by the court. The agency may modify its findings and decision by reason of the additional evidence and shall file such evidence and any modifications, new findings, or decisions." (Emphasis added)

The remand provisions of Section 19(d)(2) provide two statutory requirements. First, the court must be satisfied that the additional evidence is *material.* Surely, the granting of a federal branch creating an additional competing savings institution in a small town is a material fact. The materiality is further emphasized by the fact that the Independence charter was granted originally as the "competitive alternative" to the *one* existing local federal savings and local association.

The second statutory requirement is that there be "good reasons for the failure to present the evidence in the proceedings before the agency." In this instance, none of the parties could present evidence of the granting of the federal branch in Gonzales until the branch was approved, and it is undisputed that this occurred after the Commissioner initially granted the Independence charter.

## II.

■ The second question for our determination is whether the court correctly held that the findings of the Commissioner were irreconcilable and invalid, and that the irreconcilability of the underlying facts render such orders invalid because of the absence of underlying facts and are not reasonably supported by substantial evidence.

We cannot agree with this conclusion of the trial court; consequently, we sustain appellants' points of error directed thereto.

This is primarily a "substantial evidence" case. The original record of the hearing before the Savings and Loan Commissioner in 1976 contains a transcript of testimony of 294 pages plus 19 separate exhibits submitted to the Commissioner by the charter applicants and separate exhibits admitted into evidence on behalf of the opponents.

The Commissioner made the statutory ultimate findings required by Sections 2.02, 2.03, 2.04, 2.05 and 2.06 of the Savings and Loan Act, Article 852a, V.C.S., all favorable to appellant Independence Savings and Loan Association, and then made a highly comprehensive, detailed summary of the underlying facts in support of those ultimate findings.

After setting out the corporate structure of Independence, capital stock directors and their qualifications, the order makes numerous underlying findings of fact based on the testimony adduced at the hearing. We are primarily concerned here with the statutory requirements of public need for a new facility, its projected profitability and whether or not it will unduly harm any existing association.

In the first, or 1976 hearing, the Commissioner's findings disclose that Gonzales County has a population of approximately 16,300 people and that the economic base of the county is primarily founded on agriculture. The findings then state certain economic facts about the county such as a series of cash receipts for farm marketings, increased employment in the labor force, increases in total earnings and total incomes, increases in city sales tax allocation,

increases in total bank deposits, and the increase in total savings in Gonzales County Savings and Loan Association. The total assets of that association were $13,621,000 in 1965, $21,662,000 in 1970, and $37,657,000 in 1975. These totals increased every single year during that ten-year period and that Gonzales County Savings increased even further during the first quarter of 1976 to $38,982,000. The findings further state the residents of Gonzales County are excellent savers, or higher than average in this regard, that not only is the county a good savings and loan market but it is reasonable to anticipate that Independence might obtain both savings and loans from beyond the boundaries of Gonzales County.

Although the findings further state building permit records, deed of trust recordings, all increasing, for the purpose of this opinion we need not expand on these facts.

Consequently, the Commissioner found a public need for a new savings institution in Gonzales County where the economic base is presently sound and growing and reflects a healthy and prosperous area in which the new association will operate.

As we stated above, at the time of this hearing, Yoakum Federal Savings and Loan Association's application for a branch office in Gonzales was being processed by the federal authorities and was granted a few days after appellant's application had been approved.

As we also stated above, we are fully in accord with the court's remand of the case to the Commissioner for further consideration of the impact of the Yoakum Federal's branch office in Gonzales County.

In compliance with the court's order, the Savings and Loan Commissioner held another hearing in the spring of 1977. This 1977 hearing adds another 492 pages of transcript plus another 25 exhibits to the record. Following this, the Commissioner issued another order wherein he found

". . . that there is not adequate basis or justification to withdraw or rescind or change the conclusion of his July 12, 1976 order or the ultimate findings contained therein because of the subsequent action by the federal regulatory authorities approving the Gonzales branch office for Yoakum Federal Savings and Loan Association or for any other reason. Rather, the Commissioner reasserts and reaffirms all of the ultimate findings contained in Part II of his July 12, 1976 order."

We find nothing inconsistent in the two orders and hold that the orders, taken together, are valid, legal orders, based on substantial evidence adduced before the Commissioner in support of appellant's charter.

The first order, as we outlined above, found a necessity for a new facility. The second order found that there was a necessity for the new facility even taking into consideration a new branch office not considered [1] in the first hearing or in the order following that hearing. It was the Commissioner's prerogative to so find if such finding is buttressed by the statutory requirements.

In the second order of 1977 issued pursuant to the remand by the trial court, the Commissioner found: "A complete review of the additional economic, demographic, and financial evidence presented during the 1977 reopened hearing reflects a continuation of the healthy growth and expansion of the economic base of the Gonzales County community which the Commissioner found to exist based upon the previous hearing record. It would serve no purpose in this order to repeat the underlying statistical facts set out in the basic July 12, 1976 order to which this order is a supplement. However, the Commissioner deems it pertinent to recite some of the more recent data that has now been presented to him." The second order then states additional underlying facts in support of restated ultimate

---

1. We are fully aware that there is a division of opinion in this case as to whether the possible inclusion of the federal facility into Gonzales County was taken into consideration by the Commissioner when he issued the 1976 order. For the purposes of this decision, we find this fact to be immaterial as it was fully considered at the second hearing in 1977.

facts similar to those in the first order. These additional facts point to a slight population increase since the figures given in the first hearing, increase in the labor force, increase in personal income, and that the total cash receipts for farm marketings for Gonzales County hit an all time high for 1975 of $78,131,000 compared to $71,906,000 for 1974. Recent increases were also noted in gross sales for the county, bank debits, building permits, in addition to a continued growth in mortgage lending.

Recent expansion of bank deposits in the county were noted. Indeed, the total savings of Gonzales County Savings and Loan Association grew from $37,657,000 at year end 1975 to $42,220,000 at year end 1976.

The order found further that Yoakum Federal Savings and Loan Association has also done well both from a savings standpoint and a loan standpoint in Gonzales County. The Association's Gonzales County savings at the time it filed its federal branch application in the spring of 1976 totaled approximately $132,000 and had a total Gonzales County savings as of September, 1976, of $298,000 compared with a March 30, 1977, total of $707,000. This association increased its Gonzales County savings by $409,000 during the last seven months. Yoakum Federal Savings and Loan Association had 81 loans in Gonzales County in a total dollar amount of $1,982,-000 at the time it made its branch application in the spring of 1976. It now has 96 total loans on its books from Gonzales County in a total dollar amount of $2,891,-000. Since it opened its branch office in Gonzales on September 1, 1976, Yoakum Federal Savings and Loan Association has closed 20 loans in the total dollar amount of $590,000 and it has 21 additional first mortgage loan commitments outstanding in a total dollar amount of $627,000.

The Commissioner further found that: "Obviously, both Gonzales County Savings and Loan Association and Yoakum Federal Savings and Loan Association are doing well competing against each other in this healthy, expanding economy."

The two orders speak for themselves. There is no conflict. The 1976 order contains findings and states underlying facts as those facts existed as of the time it was entered. The 1977 order does the same. Each order is consistent with the facts in the record upon which it was based and both orders are consistent with each other.

It is apparent from the record that this has been a stoutly contested case from the very beginning; however, the Commissioner has made his call, complied with the statutory requirements in writing his order and the order is amply supported by substantial evidence.

III.

■ Appellee Yoakum Federal Savings and Loan Association suggests that the Commissioner erred in his statement in the May 25, 1977 supplemental order that there was no contention in the record before him of undue harm to Yoakum Federal Savings and Loan Association. This pertains to the Commissioner's ultimate finding that no undue harm to appellee would result from granting appellants' charter. They cite the court to testimony by the president of that Association where the words "undue harm" were used. Appellants contend that the Commissioner's statement correctly describes the record before him. We hold that what the Yoakum Federal officer was talking about was the potential loss of additional business—not undue harm. The following testimony given by Mr. C. T. Matthew in the second hearing in 1977 is instructive:

"Q All right, sir, if Independence Savings & Loan begins operations in Gonzales a few blocks away from you as they propose to do, would that have an adverse effect upon your branch operation, your investment in that branch and the entire association, in your opinion?

"A Well, yes, it would have an adverse effect on our operation, because as you can see, we are growing, and we would certainly hope to continue to grow to get something back on our

**468**

investment that we are placing in Gonzales.

We feel it would be undue harm to us.

"Q Do you intend to continue to operate in Gonzales and compete there with the $200,000 investment that Yoakum Federal has committed to you?

"A Absolutely. Our total business, as you can see by adding the savings and loans, exceeds 3½ million dollars. In fact, I believe it is almost 3.7 million.

We have that much to start with, and that is enough to sustain a branch, but I have a feeling that we will get a few more dollars and a few more loans."

"Q So you knew—I think you indicated in response to Mr. McCalla's question you already had enough business for it to be profitable, even if you didn't get any more, I believe was your testimony on Thursday, wasn't it, Mr. Matthew?

"A Well, we had enough to believe that we could—if it were not profitable land, we could make it so.

"Q So do I understand now that you determined that based on the existing business you had before you even filed the branch, that you were satisfied you were going to have enough business for that branch to be profitable?

"A Yes."

Obviously, the potential loss of additional profits does not constitute a contention of undue harm in the statutory sense. That is the clear holding of the Texas Supreme Court in *Gerst v. Nixon*, 411 S.W.2d 350 (Tex.1966), where the Court said:

"In substance, the 'injury' resulting to Southeast Texas by the granting of a charter to a Livingston association would be related solely to competition for future business. The probable slowing down of the rate of growth of an existing association because of a lessened opportunity to obtain business in a prospectively developing area because of competition cannot be regarded as an injury to such existing association." 411 S.W.2d 359.

The judgment of the trial court is reversed and judgment is here rendered reinstating the Commissioner's order.

Reversed and Rendered.