**TEXAS OIL AND GAS CORPORATION, Appellant,**

v.

**RAILROAD COMMISSION of Texas et al., Appellees.**

No. 12827.

Court of Civil Appeals of Texas, Austin.

Dec. 6, 1978.

C. C. Small, Jr., Larry W. Langley, Small, Craig & Werkenthin, Austin, for appellant.

John L. Hill, Atty. Gen., Austen H. Furse, Asst. Atty. Gen., Austin, for Railroad Commission.

Dan Moody, Jr., Graves, Dougherty, Hearon, Moody & Garwood, Austin, for Pelto Oil Co.

Robert C. McGinnis, McGinnis, Lochridge & Kilgore, Austin, for Hughes and Hughes.

SHANNON, Justice.

Appellant, Texas Oil and Gas Corporation, appeals from the judgment of the district court of Travis County which affirmed an order of the Railroad Commission. The order established the net acre-feet of reservoir space in the Pettus Southeast Field in Bee County, a common gas reservoir, and also allocated the total net acre-feet to the separately owned tracts in the field for proration purposes. We will affirm the judgment of the district court.

Appellee Hughes and Hughes, a partnership, and appellant hold leases in the Pettus Southeast Field. Appellee Pelto Oil Company, a corporation, owns a 25 percent working interest in the Hughes lease. For purposes of this opinion, it is accurate to state that appellant applied to the Commission for an amendment of the field rules in the Pettus Southeast Field to change the allocation of gas well allowables in the reservoir from 100 percent surface acreage allocation to 100 percent net acre-foot allocation.

The Commission's task was to determine the net acre-feet assignable to each tract. The parties presented evidence pertaining to that issue. After hearing, the Commission entered its order in which it assigned 34,400 productive net acre-feet to the Hughes tract and 3,345 productive net acre-feet to appellant's tract, a material reduction of appellant's participation. The Commission grounded its determinations on Pelto Exhibit 13, an isopach map showing the productive limits and thickness of the reservoir, and Pelto Exhibit 15, a tabulation of acre-feet attributable to each operator within the productive limits of the reservoir.

The controversy between the parties concerned the course and direction of the western segment of a fault line which forms the southern productive limit boundary of the reservoir. Appellant contended that the fault ran more or less in an east-west direction. Pelto, on the other hand, claimed that the fault line dipped more to the south, thereby putting a greater amount of productive area in the Hughes lease and entitling Hughes to a greater allocation of acre-feet of productive sand. The Commission adopted Pelto's view.

Appellant's first point of error is that the district court erred in affirming the Commission's order in that it was not supported by substantial evidence. Pelto's position as to the location of the fault was presented by its geologist, Dan C. Hudson. Both on direct and cross-examination Hudson testified as to the geologic basis for his conclusion that the western segment of the fault line curved to the south.

Appellant claims that Hudson's opinion testimony is no evidence either because it was based upon unfounded assumptions or because it was the result of inference piled upon inference.

Opinions of experts are received in agency hearings, as well as in conventional trials, upon the theory that by reason of study or experience, experts have a special knowledge of the subject of inquiry which the fact finders generally do not possess and that the experts are therefore better equipped to draw conclusions from the facts than are the fact finders.

 Pelto qualified Hudson as an expert without challenge from appellant's representative. Appellant was represented at the Commission's hearing not by counsel, but instead by a consulting petroleum engineer. Hudson was permitted to testify and give opinions to matters within the realm of his expertise. On appeal, appellant seeks in part to undermine Hudson's opinion testimony by claiming that his statement that two existing wells were in the same fault block was an unwarranted assumption. That some of the facts to which Hudson testified were not capable of direct proof, in

the sense of having someone testify to direct observation of them, does not mean that his testimony may be fairly characterized as assumption. Because most geological facts are not directly observable, much of the lore of geology must rest on reasonable conclusions drawn from facts indirectly observed and sometimes imperfectly known.

■ It appears to us that Hudson's statement was not an assumption, but instead it was the statement of an expert as to a geological fact based upon a study of the logs of the wells and a comparison of them presented on his cross section. We agree with Pelto and Hughes that Hudson did not make an assumption and then proceed to another presumption based thereon. Rather, Hudson testified to geological facts available to him, and gave his expert conclusions drawn therefrom, a method of reasoning used by scholars from at least the time of Aristotle.

■ Appellant's representative cross-examined Hudson as to the foundation for his opinions. As was its right, appellant argued to the Commission that Hudson's opinions, grounded upon allegedly incorrect premises, did not warrant belief. The Commission was entitled, of course, to believe or disbelieve Hudson's testimony. See *Board of Firemen's Relief & Retirement Fund Trustees v. Marks*, 150 Tex. 433, 242 S.W.2d 181 (1951). The Commission chose to believe Hudson's evidence.

■ Hudson's opinion evidence is substantial evidence even though its reliability was questioned. In a substantial evidence rule appeal, the reviewing court does not substitute its judgment for that of the agency. We are of the view that reasonable minds could have arrived at the conclusion that the Commission must have reached in entering its order. It follows that appellant's point of error should be overruled. *Auto Convoy Company v. Railroad Commission of Texas*, 507 S.W.2d 718 (Tex. 1974).

■ The Administrative Procedure and Texas Register Act empowers the reviewing trial court, under certain conditions, to order the administrative agency to take additional evidence. Tex.Rev.Civ.Stat.Ann. art. 6252–13a, § 19(d)(2) (Supp.1978). The refusal of the district court to reverse and remand the Commission's order with instructions to reopen the record and permit the introduction of additional evidence is appellant's complaint in its second point of error.

Section 19(d)(2) provides that:

"(2) any party may apply to the court for leave to present additional evidence and the court, if it is satisfied that the additional evidence is material and that there were good reasons for the failure to present it in the proceeding before the agency, may order that the additional evidence be taken before the agency on conditions determined by the court. The agency may modify its findings and decision by reason of the additional evidence and shall file such evidence and any modifications, new findings, or decisions with the reviewing court . . ."

Before a cause may be remanded to the agency with instructions that additional evidence be taken under the authority of § 19(d)(2), the court must be satisfied (1) that the additional evidence is material *and* (2) that there were good reasons for the failure of the party to present the evidence before the agency. *Independence Savings and Loan Association v. Gonzales County Savings and Loan Association*, 568 S.W.2d 463 (Tex.Civ.App.1978, writ ref'd n. r. e.).

■ The additional evidence which appellant urged the district court to order the Commission to consider consisted of certain seismic data. Those findings were in existence at the time of the Commission's hearing, but were not introduced into the agency record. In its motion for rehearing filed with the Commission, appellant urged the Commission to reopen its hearing and reconsider the case in light of the seismic data. The Commission overruled the motion for rehearing.

The district court refused to allow appellant to introduce evidence that would show (1) the alleged materiality of the seismic

data and (2) the alleged good reason for its failure to put that evidence into the record in the Commission's hearing. The evidence tendered to show materiality and good reason appears in the record by bill of exception.

The seismic information was obtained from two seismic shot lines across the reservoir. The data contradicted Hudson's location of the western segment of the fault defining the productive limits of the reservoir. The Commission, if it had considered the seismic data, could have reached a conclusion contrary to its previous conclusion. Appellant's tendered evidence meets the test of materiality under art. 6252–13a, § 19(d)(2).

■ Appellant has not shown good reason for its failure to produce the seismic data in the Commission's hearing. Appellant's representative at the Commission's hearing, the consulting petroleum engineer, testified on bill of exception that he had investigated Hughes' filings with the Commission prior to the hearing and that those filings showed that the western segment of the fault ran in an east-west line without curving to the south. Because the Hughes filing showed a fault location similar to that contended for by appellant, the engineer was satisfied that there would be no contest as to the location of the western segment of the fault line. An examination of the hearing record shows that the petroleum engineer's repose should have been short-lived. The very first witness was Hudson who proceeded to testify to a contrary location of the western segment of the fault. Appellant had the remainder of the hearing to marshal its evidence to rebut Hudson's testimony.

The reason that the seismic data was not produced in the Commission's hearing was shown by the petroleum engineer's testimony on cross-examination on the bill. He testified that he knew of the existence of the seismic data and that it would support appellant's view of the location of the fault. When asked about his failure to present the seismic information at the hearing, the engineer responded:

"A No, I believed there was substantial evidence in the record to support the finding of our interpretation. I did not believe there was substantial evidence in the record to support another adoption of a PELTO finding, but I believed that the record had sufficient evidence to support the findings that we had urged.

"Q So for that reason you didn't put in the seismic data?

"A Correct."

■ It is apparent that the petroleum engineer made a judgment call not to include the seismic data in the record of the original hearing. Viewed after-the-fact, the judgment call was erroneous. Errors in judgment made during the agency hearing cannot constitute good reason for ordering the Commission to consider additional evidence under art. 6252–13a, § 19(d)(2).

■ Appellant's final point is that the district court erred in refusing to hold that appellant had been denied procedural due process by the Commission and in refusing to remand the cause to the Commission for that reason. The Commission did not violate due process by denying appellant's motion for rehearing. Appellant had an opportunity to have all of its evidence considered by the Commission. The reason that the seismic data was not considered stemmed from the calculated tactic of appellant's representative. The point of error is overruled.

The judgment is affirmed.