# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00182-CV

**John J. Rogers, Jr.; James R. Winton and Burl Richardson, Appellants**

**v.**

**Texas Board of Architectural Examiners, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT
NO. D-1-GN-08-004634, HONORABLE GISELA D. TRIANA-DOYAL, JUDGE PRESIDING**

## O P I N I O N

The principal issue in this administrative appeal is the extent to which engineers licensed under Texas's Engineering Practice Act, Tex. Occ. Code Ann. §§ 1001.001-.604 (West 2004 & Supp. 2010), are exempt from the provisions of the Architecture Practice Act, Tex. Occ. Code Ann. §§ 1051.001-.801 (West 2004 & Supp. 2010). The Texas Board of Architectural Examiners (the "Architecture Board") issued cease and desist orders against three licensed professional engineers, John J. Rogers, Jr., James R. Winton, and Burl Richardson (collectively, the "Engineers"), for the unauthorized practice of architecture in connection with the Engineers' work in preparing comprehensive building plans and specifications for certain public works projects. *See id.* §§ 1051.701, .703(a). Based on the language in section 1051.703(a) of the Architecture Practice Act, which specifies that "architectural plans" for a class of public works projects "may be prepared only by an architect," the Architecture Board determined that the salient inquiry in the underlying

enforcement proceeding was whether the Engineers were practicing architecture in preparing the plans and specifications at issue. *Id.* § 1051.703(a). We hold, however, that the dispositive issue here is not whether the Engineers were practicing architecture, but whether they were practicing engineering, because section 1051.601 of the Architecture Practice Act broadly exempts licensed engineers from its registration requirements to the extent they are performing "an act, service, or work within the scope of the practice of engineering as defined [in the Engineering Practice Act]." *Id.* § 1051.601. Because the record is insufficient to conclusively establish or negate the applicability of the exemption, the district court properly reversed the Board's final order and remanded for further proceedings. We will affirm the district court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Between 2003 and 2006, the Engineers, each of whom is duly licensed to practice engineering in the State of Texas, prepared and issued comprehensive plans and specifications for various publicly owned buildings—a library in Waco, Texas, an addition to a public school in Chilton, Texas, an auditorium for the Lorena Independent School District, and a law enforcement center in Jasper, Texas. It is undisputed that, in performing the work for these public works projects, the Engineers were not registered as architects in Texas or any other jurisdiction, did not hold themselves out as architects, did not seal the plans with an architect's seal, and did not associate with an architect to prepare, review, sign, or seal the plans or supervise or control preparation of the plans.

Although each of the Engineers had issued similar plans and specifications throughout the long courses of their careers, the Architecture Board filed complaints against them for the unauthorized practice of architecture in violation of sections 1051.701 and 1051.703(a) of the

2

Architecture Practice Act.  Section 1051.701(a) specifies that "[a] person may not engage in the practice of architecture, or offer or attempt to engage in the practice of architecture, as defined in Section 1051.001(7)(A), (B), or (C) unless the person is registered as an architect under this chapter."[1]  *Id.* § 1051.701(a).  Section 1051.703 provides, in relevant part:

> (a) An architectural plan or specification for any of the following may be prepared *only by an architect*:
>
>    . . . .
>
>     (2)      a new building having construction costs exceeding $100,000 that is to be:
>
>          (A)     constructed and owned by a state agency, a political subdivision of this state, or any other public entity in this state; and
>
>          (B)     used for education, assembly, or office occupancy; or
>
>     (3)      an alteration or addition having construction costs exceeding $50,000 that:
>
>          (A)     is to be made to an existing building that:
>
>               (i)     is owned by a state agency, a political subdivision of this state, or any other public entity in this state; and
>
>               (ii)    is or will be used for education, assembly, or office occupancy; and

---

[1]  The quoted text is the provision that was in effect at the time the underlying enforcement actions were filed.  However, this version, as well as modifications to the definition of the "practice of architecture" to which it refers, became effective September 1, 2005, which was after some of the subject building plans and specifications were issued.  The parties do not address which version of these statutes govern this case, but because the resolution of this issue is not necessary for the proper disposition of this appeal, we do not reach it.

        (B)      requires the removal, relocation, or addition of a wall or partition or the alteration or addition of an exit.

(b) This section does not prohibit an owner of a building from choosing an architect or engineer as the prime design professional for a building construction, alteration, or addition project.

*Id.* § 1051.703 (emphasis added).[2]

The Engineers do not dispute that the public works projects at issue meet the criteria specified in section 1051.703(a), including the monetary thresholds. However, they contend that neither section 1051.703(a) nor any other restriction or provision in the Architecture Practice Act precludes their work on the projects because section 1051.601 of the Act wholly exempts licensed engineers from regulation under the Act. The statutory exemption provides, in part, that "[t]his chapter and any rule adopted under this chapter do not limit the right of an engineer licensed under Chapter 1001 [the Engineering Practice Act] to perform an act, service, or work within the scope of the practice of engineering as defined by that chapter." *Id.* § 1051.601(a). The Engineers also point out that (1) section 1051.703(b) of the Architecture Practice Act allows a property owner to use either an architect or an engineer as "the prime design professional for a building construction, alteration, or addition project," and (2) section 1001.407 of the Engineering Practice Act requires

---

    [2] The term "architectural plan" is not defined in the occupations code, but by rule, the Architecture Board defines the term to mean "a Construction Document that depicts in detail the design of the spatial relationships and the quality of materials and systems required for the construction of a building and its environs." 22 Tex. Admin. Code § 1.211 (2011) (Tex. Bd. of Architectural Exam'rs, Practice; Architect Required). The rule also provides an extensive list of construction and design elements that are included within the meaning of the term. *Id.* This rule became effective shortly before the enforcement actions were filed, but after the disputed building plans and specifications were issued.

an engineer to prepare the "engineering plans [and] specifications" and oversee the "engineering construction" of "a public work involving engineering in which the public health, welfare, or safety is involved." *Id.* §§ 1001.407, 1051.703(b).

The Architecture Board counters that the "only by an architect" language in section 1051.703(a) trumps the exemption provided in section 1051.601, rendering it inapplicable. The Architecture Board has not specifically alleged that the Engineers were not engaged in the practice of engineering when they issued all the plans and specifications for the public works projects, but its statutory construction argument presupposes that the legislature intended to exclude such projects from the statutory definition of the "practice of engineering" as a matter of law.

The parties pressed these statutory construction claims on cross motions for summary disposition before an administrative law judge (ALJ) at the State Office of Administrative Hearings (SOAH).[3] In essence, the Architecture Board argued that licensed engineers may never prepare all the building plans and specifications for the projects identified in section 1051.703(a) unless they are registered as an architect or engage the services of a registered architect, whereas the Engineers argued that they are categorically exempt from all regulation under the Architecture Practice Act because the preparation of comprehensive plans and specifications for any building are, as a matter

---

[3] The Texas Administrative Code authorizes an ALJ to issue a proposal for decision on all or part of a contested case without an evidentiary hearing—a procedure referred to as "summary disposition"—if the evidence shows that there is no genuine issue of material fact and that a party is entitled to a decision in its favor as a matter of law. 1 Tex. Admin. Code § 155.505 (2011) (State Office of Admin. Hearings, Disposition of Case).

5

of law, within the scope and practice of engineering. Both parties asserted that the statutory language is unambiguous and that there were no genuine issues of material fact that precluded summary disposition.

In support of their motion, the Engineers submitted letters from the Executive Director of the Engineering Board, opining that the Engineers were engaged in the practice of engineering with respect to their work on the public works projects at issue. For example:

> Based upon our review of the design plans, Mr. Winton's credentials as a licensed professional engineer with education and experience in structural engineering design, and Section 1051.601 Texas Occupations Code, it is our opinion that Mr. Winton possesses the competence and legal authority to perform the designs shown on the pertinent plan sheets. Therefore, we do not believe your agency should take administrative action against Mr. Winton for performing the designs in question.

The Engineers also offered their own affidavits, each substantially similar to the others, in which they testified as to their qualifications to prepare the plans at issue and concluded, in nearly identical statements, that (1) the practice of engineering includes comprehensive building design, and (2) each engineer was practicing engineering when he prepared the plans and specifications at issue.[4] The

---

[4] For example, Winton's affidavit avers, in part:

2. I have been a professional engineer since 1990. My practice is almost exclusively comprehensive building design. In 1984, I received two degrees from Texas A & M University: A B.S. in Building Construction from the Texas A & M College of Architecture and Environmental Design and a B.S. in Civil Engineering from the College of Engineering. I worked, during school during Summers [sic] and breaks from 1980-1984, for an engineering consulting firm that had been in the business of comprehensive building design since the 1940s. In 1985, I worked for a successor to that engineering firm to complete my engineering training for licensure in 1990. I continued to work for that firm after licensing until its founder retired, at which point I became a principal in the firm. A copy of my resume is attached to this

6

affidavits did not elaborate on the factual bases underlying their conclusions nor in any way tie the elements of the particular projects to the statutory definition of the "practice of engineering" provided in section 1001.003 of the Engineering Practice Act.

The Architecture Board did not submit controverting evidence and objected to the affidavits only on the basis that the Engineers' qualifications were irrelevant to whether they were engaged in the practice of architecture. Likewise, the Board submitted no evidence concerning whether the building plans constituted "architectural plans" other than the plans themselves.

After the deadline for filing summary-disposition motions and responsive pleadings, but before the time specified for submitting "all supplemental filings pertaining to the parties' respective motions for summary disposition," the ALJ granted the Engineers' motion for summary disposition, denied the Architecture Board's motion, and closed the record. In her proposal for decision (PFD), the ALJ concluded that the statutory exemption unambiguously dictates the dispositive issue to be whether the Engineers were practicing engineering, regardless of whether their conduct also constituted the practice of architecture. In addition, the ALJ afforded controlling

---

affidavit. The resume correctly summarizes my education background and experience.

. . . .

4. I have the education and experience in structural engineering design that makes me competent to prepare the plans and specifications for the Lorena ISD auditorium.

5. When I prepared the plans and specifications for the Lorena ISD [sic] I was practicing engineering.

6. When I engage in comprehensive building design, I am practicing engineering.

7

deference to the Texas Board of Professional Engineers' ("Engineering Board") determination that the Engineers were engaged in the practice of engineering and concluded that no action should be taken against the Engineers by the Architecture Board for their work on the disputed building plans and specifications. The ALJ subsequently overruled the Architecture Board's staff's exceptions to the PFD, which included a challenge to the legal sufficiency of the evidence and a request to reopen the record to introduce additional evidence because the record was prematurely closed. The Architecture Board, however, rejected the ALJ's fact findings and conclusions of law related to the applicability of the exemption and instead substituted findings and conclusions that the Engineers were engaged in the unauthorized practice of architecture.

After exhausting their administrative remedies with the Architecture Board, the Engineers sought judicial review of the Board's final order in the district court. The district court reversed the Board's decision, concluding that (1) section 1051.601(a) does not categorically exempt licensed engineers from the strictures of the Architecture Practice Act, (2) the ALJ erred in giving conclusive effect to the Engineering Board's letter because it was issued without an administrative hearing, (3) the Architecture Board similarly erred in relying on its own conclusions that the plans and specifications constituted the practice of architecture, and (4) traditional standards of deferring to agency interpretations do not apply in this case due to the overlapping practice areas and statutory schemes. The district court remanded the case to the Architecture Board for further proceedings and receipt of expert testimony, holding that the record is insufficient to determine whether the plans and specifications at issue constituted the practice of architecture, engineering, or both.

On appeal to this Court, the Engineers assert that (1) licensed engineers are categorically exempt from all regulation under the Architecture Practice Act, (2) the district court lacked authority to remand the case to the agency, and (3) the district court erred by not rendering judgment in their favor based on the Engineers' uncontroverted expert opinion affidavits. Notably, the Architecture Board does not complain about the district court's judgment and asks that it be affirmed in all respects, and the Engineers do not dispute the district court's determination that summary disposition was not supported solely by the Engineering Board's letter.

**STANDARD OF REVIEW**

This dispute turns principally on an issue of statutory construction, which is a question of law that we review de novo. *First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 632 (Tex. 2008). Our primary objective in construing statutes is to give effect to the legislature's intent, which we seek "first and foremost" in the statutory text. *Id.* Absent legislative definition, we rely on the plain meaning of the text unless a different meaning is apparent from the context or application of the plain language would lead to absurd results. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008); *see* Tex. Gov't Code Ann. § 311.011 (West 2005) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage."). We look to the entire act in determining the legislature's intent with respect to specific provisions. *Railroad Comm'n v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 628 (Tex. 2011); *Upjohn Co. v. Rylander*, 38 S.W.3d 600, 607 (Tex. App.—Austin 2000, pet. denied).

9

In addition, we must give "serious consideration" to the construction of a statute by the administrative agency charged with its enforcement, *Railroad Comm'n*, 336 S.W.3d at 624, and we will generally uphold the agency's interpretation if "'the construction is reasonable and does not contradict the plain language of the statute.'" *First Am. Title*, 258 S.W.3d at 632 (quoting *Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex. 1993)). Thus, we do not defer to an agency interpretation when a statute is unambiguous. *See Railroad Comm'n*, 336 S.W.3d at 624 & n.6. We also "'do not defer to administrative interpretation in regard to questions which do not lie within administrative expertise or deal with a nontechnical question of law.'" *Rylander v. Fisher Controls Int'l, Inc.*, 45 S.W.3d 291, 302 (Tex. App.—Austin 2001, no pet.) (quoting 2B Singer, *Sutherland Statutory Construction* § 49.04, at 23-24 (6th ed. 2000)).

In this case, we are also mindful of the overlap and interplay between the architecture and engineering disciplines and their respective regulatory schemes, which is widely acknowledged. *See, e.g.*, Tex. Occ. Code Ann. §§ 1001.216(d), 1051.212(d) (establishing joint advisory committee on practice of engineering and architecture to resolve issues resulting from "overlap" between activities constituting practice of engineering and those constituting practice of architecture); *Texas Soc'y of Prof'l Eng'rs v. Texas Bd. of Architectural Exam'rs*, No. 03-08-00288-CV, 2008 WL 4682446, at *4 (Tex. App.—Austin Oct. 24, 2008, no pet.) (mem. op.); Op. Tex. Att'y Gen. No. GA-0391 (2006); Op. Tex. Att'y Gen. No. DM-161 (1992); *see also Rosen v. Bureau of Prof'l & Occupational Affairs*, 763 A.2d 962, 965-66 (Pa. Commw. Ct. 2000); *Verich v. Florida State Bd. of Architecture*, 239 So.2d 29, 30-31 (Fla. Dist. Ct. App. 1970); Annotation, *What Amounts to Architectural or Engineering Services within License Requirements*, 82 A.L.R.2d 1013 § 1(b)

10

(1962 & Supp. 2011). This case is further complicated because the Architecture and Engineering Practice Acts each cross-reference each other so that the interpretation of one statute necessarily involves interpretation of the other. As this Court has previously observed,

> The legislature has delegated authority to the [Architectural Board] to regulate the *practice* of architecture and to the [Engineering Board] to regulate the *practice* of engineering. . . . By delegating [to] each board the authority to regulate the practice of each profession, defining "the practice of architecture" and "the practice of engineering," and providing statutory exemptions for both professions, it is clear that the legislature intended for each board to consider whether the particular conduct at issue meets the statutory definition of each profession and whether an exemption applies.

*Texas Soc'y*, 2008 WL 4682446, at *4 (citations omitted). As neither statute establishes a clear line of demarcation between the professions, we believe it would be unreasonable and contrary to the legislature's intent to give total deference to either agency's interpretation of the statutes to the extent of any overlap. *See* Op. Tex. Att'y Gen. No. GA-0391 (2006).

**DISCUSSION**

*Statutory Construction*

The statutes at issue in this case are not ambiguous. Section 1051.601 states, with striking clarity, that "[t]his chapter and any rule adopted under this chapter do not limit the right of an engineer licensed under Chapter 1001 [the Engineering Practice Act] to perform an act, service, or work within the scope of the practice of engineering as defined by that chapter." Tex. Occ. Code Ann. § 1051.601(a). The breadth of this exemption necessarily precludes the Architecture Board from taking any disciplinary or other action against engineers licensed under the Engineering

11

Practice Act, *to the extent they are practicing within the scope of their profession*, regardless of what any other provision of the Architecture Practice Act might otherwise say or imply.

Read in isolation, the "only by an architect" language in section 1051.703(a) might suggest that it is an "exception" to the exemption and essentially carves out a discrete class of public works buildings from either the exemption in section 1051.601(a) of the Architecture Practice Act or the statutory definition of the practice of engineering in the Engineering Practice Act. We conclude that construction is erroneous, however, because (1) it ignores the exemption's plain language that nothing in the Architecture Practice Act is to be construed as limiting the practice of engineering; (2) the exemption does not include any language that excepts section 1051.703 from its application; (3) section 1051.703 does not reference the exemption or include language excepting it from the exemption's application; (4) the Engineering Practice Act specifically requires an engineer to prepare the "engineering plans [and] specifications" for public works projects and supervise the "engineering construction" of such projects; and (5) section 1051.703(b) explicitly provides that it "does not prohibit an owner of a building from choosing an architect or engineer as the prime design professional for a building construction, alteration, or addition project." *Id.* §§ 1001.407 & 1051.601, .703.

Our conclusion is consistent with the legislative history of the public works provision codified in section 1051.703(a). Although we look principally to statutory text, the origins of that text are illuminating in this case. Since 1969, the Architecture Practice Act has included a broad

12

exemption for licensed engineers.[5]  Although the language has changed over the years, the core of

the exemption has remained the same, exempting licensed engineers to the extent they are

performing an act, service, or work within the scope of engineering, as defined by the Engineering

Practice Act.  That broad exemption was in effect when the predecessor to section 1051.703(a) was

first adopted in 1989, with similar language requiring architects to prepare the architectural plans and

specifications for the relevant category of public buildings.[6]  In the very next legislative session, this

statute, originally codified at Vernon's Ann. Civ. St. art. 249a § 16, was amended to include some

notable additions:

> Sec. 16 (a) To protect the public health, safety, and welfare of the citizens of the State
> of Texas, an architect registered in accordance with this Act must prepare the
> architectural plans and specifications for:
>
> > (1) a new building that is constructed and owned by a state agency, a political
> > subdivision of this State, or any other public entity in this State if the building will

---

[5]  Act of May 22, 1969, 61st Leg., R.S., ch. 802, 1969 Tex. Gen. Laws 2377, 2379-80 ("Notwithstanding any other provision of this Act or any rule or regulation of the Board of Architectural Examiners, nothing in this Act or any such rule or regulation, heretofore or hereafter adopted, shall be construed or given effect in any manner whatsoever so as to prevent, limit or restrict any professional engineer licensed under the laws of this State from performing any act, service or work within the definition of the practice of professional engineering as defined by the Texas Engineering Practice Act."), *amended by* Act of May 19, 1973, 63rd Leg., R.S., ch. 361, § 8, 1973 Tex. Gen. Laws 801, 804, *amended by* Act of April 26, 2001, 77th Leg., R.S., ch. 1421, § 1, 2001 Tex. Gen. Laws 4570, 4595, *renumbered by* Act of May 31, 2003, 78th Leg., R.S., ch. 331, § 3.05), 2003 Tex. Gen. Laws 1425, 1438.

[6]  Act of May 26, 1989, 71st Leg., R.S., ch. 11, §§ 7 & 8, 1989 Tex. Gen. Laws 3836, 3839 (specifying that "an architect registered in accordance with [the Architecture Practice Act] *must* prepare the architectural plans and specifications" for specified category of public works buildings (emphasis added)), *amended by* Act of May 20, 1991, 72nd Leg., R.S., ch. 579, § 2, 1991 Tex. Gen. Laws 2064, 2078, *amended by* Act of April 26, 2001, 77th Leg., R.S., ch. 1421, § 1, 2001 Tex. Gen. Laws 4570, 4603, *renumbered by* Act of May 31, 2003, 78th Leg., R.S., ch. 331, § 3.05), 2003 Tex. Gen. Laws 1425, 1441.

be used for education, assembly, or office occupancy and the construction costs exceed $100,000; or

　　　(2) any alteration or addition to an existing building that is owned by a State agency, a political subdivision of this State, or any other public entity in this State if the building is used or will be used for education, assembly, or office occupancy, the construction costs of the alteration or addition exceed $50,000, and the alteration or addition requires the removal, relocation, or addition of any walls or partitions or the alteration or addition of an exit.

(b) This section does not prohibit an owner of a building from choosing a registered architect or a registered professional engineer as the prime design professional for a building construction, alteration, or addition project.

(c) *This section does not prevent, limit, or restrict a registered professional engineer from performing an act, performance, or work that is the practice of engineering as defined by the Texas Engineering Practice Act*.

Act of May 20, 1991, 72nd Leg., R.S., ch. 579, § 2, 1991 Tex. Gen. Laws 2064, 2078 (emphasis added).  Thus, even though a different portion of the Architecture Practice Act included a broad exemption for licensed engineers, the legislature appended to the very section that purported to restrict the preparation of architectural plans and specifications for certain public works to registered architects a specific exemption that "this section" did not "prevent, limit or restrict" a registered engineer from engaging in "the practice of engineering."

　　　Subsection (c) remained part of the Architecture Practice Act's public works provision until 2001 when it was deleted as part of a *nonsubstantive* revision of the statute that was intended, in part, to eliminate redundancies.  *See* Act of May 22, 2001, 77th Leg., R.S., ch. 1421, 2001 Tex. Gen. Laws 4570,4570; House Comm. on State Affairs, Bill Analysis, Tex. H.B. 2813, 77th Leg., R.S. (2001).  The Bill Analysis accompanying this change states: "The council legal staff has taken meticulous care to ensure that no substantive change has been made in the law and to

14

preserve any ambiguity or interpretation that may exist in current law." House Comm. on State Affairs, Bill Analysis, Tex. H.B. 2813, 77th Leg., R.S. (2001). Thus, for the entire time the public works provision has existed, there has been a broad exemption applicable to that provision, a specific exemption, or both, for the practice of engineering. The plain language of the statute and the legislative history clearly belie any construction of the statute consonant with the Architecture Board's claim that the legislature intended to carve out a subclass of public works projects as the exclusive domain of registered architects, to which no exemption for engineers would apply.

We also cannot accept the Engineers' construction of section 1051.601 as a categorical bar to all regulation of engineers under the Architecture Practice Act. By its plain terms, the exemption in section 1051.601(a) is broad but not unlimited. Moreover, to construe section 1051.601(a) as an absolute exemption would render subsection (b) of the exemption meaningless. A cardinal rule of statutory construction is that the legislature is not presumed to have done a useless or meaningless act. *Hunter v. Fort Worth Capital Corp.*, 620 S.W.2d 547, 551 (Tex. 1981).

Subsection (b) of section 1051.601 provides a specific exemption in addition to the general exemption provided in subsection (a):

(b) This chapter does not prohibit an engineer licensed under Chapter 1001 from:

    (1)    planning and supervising work on:

        (A)    a construction project primarily intended for engineering use, including a railroad, hydroelectric work, or industrial plant; or

        (B)    a structure incidental to a construction project described by Paragraph (A); or

15

(2)     planning, designing, or supervising the mechanical, electrical, or structural features of a building.

Tex. Occ. Code Ann. § 1051.601(b).  Subsection (b) would not be required if subsection (a) had the meaning the Engineers ascribe to it.  Giving subsection (a) the effect indicated by its plain meaning preserves the usefulness of subsection (b) as providing a class of engineering work that is categorically exempt without requiring evaluation under the terms of the Engineering Practice Act. The Engineers' construction does not do so, and therefore it cannot be given effect.  *See* Op. Tex. Att'y Gen. No. GA-0391 (2006) (observing that specific exception in section 1051.601(b) "would be unnecessary if the practice of engineering included all of the practice of architecture").

Thus, the substantive inquiry for purposes of the present administrative enforcement action is not whether the Engineers engaged in acts that would constitute the practice of architecture, but whether what they did was encompassed within the practice of engineering as defined by the Engineering Practice Act.  Because the Board's cease and desist order was based on an erroneous construction of the governing statute, the district court correctly reversed the Board's final order. *See* Tex. Gov't Code Ann. § 2001.174(2) (West 2008).

***Propriety of Remand***

Section 2001.174 of the Administrative Procedure Act (APA) requires a reviewing court to reverse or remand a case for further proceedings "if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions" are "arbitrary and capricious or characterized by abuse of discretion," violated a statutory provision, or are "affected by other error of law," among other grounds.  *Id.* § 2001.174(2)(A), (D), & (F).

16

Section 2001.175(c) of the APA also authorizes a case to be remanded in order to allow additional evidence to be taken before an agency, but only if (1) the evidence is material and (2) there were good reasons for the failure to present it in the proceeding before the administrative agency. *Id.* § 2001.175(c) (West 2008). The district court's decision to remand and the scope of remand are reviewed for an abuse of discretion. *See Texas Dep't of Pub. Safety v. Story*, 115 S.W.3d 588, 594 (Tex. App.—Waco 2003, no pet.); *City of Port Arthur v. Southwestern Bell Tel. Co.*, 13 S.W.3d 841, 844 (Tex. App.—Austin 2000, no pet.); *cf. Bexar County Civil Serv. v. Casals*, 63 S.W.3d 57, 61-62 (Tex. App.—San Antonio 2001, no pet.) (observing that a similarly worded statute, Tex. Local Gov't Code Ann. § 158.0121, "grants the trial court discretion to decide which course of action [reversal or remand] is appropriate").

The Engineers do not, of course, contend that the district court improperly reversed the Architectural Board's final order (although the grounds for reversal were less favorable than the Engineers desired). However, they assert that the court did not have the authority to remand the case under section 2001.174 absent a determination that their substantial rights would be prejudiced if the case were not remanded. Stated another way, the Engineers contend that section 2001.174 required the district court to render judgment in their favor unless the court determined that remanding the case was more favorable to the Engineers than rendition of judgment. Alternatively, the Engineers contend that the district court improperly remanded the case to allow the Architectural Board to introduce additional evidence bearing on the applicability of the engineering exemption without following the procedure provided in section 2001.175(c). We reject both contentions.

17

First, the Engineers' interpretation of section 2001.174 is contrary to the plain meaning of the statute and would render meaningless the express language that authorizes a reviewing court to remand a case to the agency for further proceedings. We can scarcely conceive of a scenario where it would be more beneficial to the appealing party to have a case remanded after reversal instead of having judgment rendered in his or her favor, yet the statute clearly authorizes a reviewing court to remand for further proceedings. Moreover, the textual focus of section 2001.174 is on the effect of a qualifying error in the underlying proceeding; specifically, did the *error* prejudice the appellant's substantial rights? The statute does not require that the court's *disposition* be parsed into its components and evaluated under the same standard. Because it cannot be credibly argued that the Architecture Board's final order—which erroneously interpreted and applied the relevant provisions of the Architecture Practice Act and resulted in a cease and desist order being issued against the Engineers—did not prejudice the Engineers' substantial rights, the district court had authority under section 2001.174 to remand the case to the Board for further proceedings.

Second, section 2001.175(c) does not limit the district court's authority to remand under section 2001.174 if there is a qualifying error and rendition is not otherwise mandated. On judicial review of an administrative agency's final order, a court is generally confined to the administrative record before the court. *Id.* § 2001.175(e); *see also City of Port Arthur*, 13 S.W.3d at 844. Section 2001.175(c), however, provides a procedure by which to expand the evidentiary record after an administrative agency has issued its final order and the case is under judicial review. Tex. Gov't Code Ann. § 2001.175(c). In cases in which this procedure is typically invoked, an evidentiary hearing has been conducted in the administrative proceedings and a party has requested

18

remand to allow the agency to reconsider its findings and decisions in light of the additional evidence. *See generally City of Port Arthur*, 13 S.W.3d at 841-44; *Texas Oil & Gas Corp. v. Railroad Comm'n of Texas*, 575 S.W.2d 348 (Tex. Civ. App.— Austin 1978, no writ). Even if section 2001.175(c) might have been an available remedy in this case, which we do not decide, the district court was not required to employ it in light of the procedural posture of this case.

The administrative complaint was resolved on summary disposition under the premise that the dispute could be resolved as a matter of law, and the district court fulfilled its duty to confine judicial review to the administrative record. Based on that review, the court determined that the Architectural Board misapplied the law and that *neither* party sustained its summary-disposition burden. Although the district court's judgment might superficially be characterized as an order authorizing the parties to present additional evidence, the court's judgment is more accurately construed as concluding that the administrative record was insufficient to sustain a judgment in either party's favor as a matter of law. The district court, if correct, had discretion to remand for further proceedings, especially in light of the fact that the ALJ closed the record—arguably prematurely—when the Architecture Board might reasonably have believed that it had additional time to file supplemental materials related to the summary-disposition motions.

Because we can discern no procedural or statutory impediment to remanding this case, we now turn to the Engineers' claim that remand was unnecessary and rendition was required. The Engineers contend that the issue of what activities constitute "the practice of engineering" can be

19

determined as a matter of law,[7] both by application of the definitions provided in the Engineering Practice Act and by reference to the Engineers' expert opinion affidavits. We disagree.

The Engineers' affidavits, even if unchallenged, are insufficient on their face to support judgment in the Engineers' favor because they are conclusory, i.e., they consist of conclusions unsupported by facts. It is well settled that the naked and unsupported opinion or conclusion of a witness, including an expert witness, does not constitute evidence of probative force and will not support a judgment even when admitted without objection. *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 232-33 (Tex. 2004); *Burrow v. Arce*, 997 S.W.2d 229, 235 (Tex. 1999); *City of Waco v. Texas Comm'n on Envtl. Quality*, No. 03-09-00005-CV, 2011 WL 2437669, at *37 (Tex. App.—Austin June 17, 2011, no pet. h.).

Furthermore, the matter cannot be settled simply by looking at the plans and the statutory definitions. The Engineering Practice Act broadly defines the "practice of engineering" as:

> the performance of or an offer or attempt to perform any public or private service or creative work, the adequate performance of which requires engineering education, training and experience in applying special knowledge or judgment of the mathematical, physical or engineering sciences to that service or creative work.

Tex. Occ. Code Ann. § 1001.003(b). The statute also provides a number of more specific but nevertheless broad categories of activities falling within the scope of, and limited by, the general definition. *Id.* § 1001.003(c). Neither the general nor specific definitions of "the practice of

---

[7] In the proceedings below, the Engineers asserted that only the Board of Professional Engineers possesses the qualifications and authority to determine what constitutes the practice of engineering, but they do not make a similar claim to this Court.

20

engineering" expressly include comprehensive building design within their scope, nor do they expressly exclude it. Nevertheless, the Engineers assert that some of the specific provisions necessarily encompass comprehensive building design. *See id.* § 1001.003(c)(2), (7), (10) (West Supp. 2010) (noting that practice of engineering includes "design, conceptual design, or conceptual design coordination of engineering works or systems," "engineering for construction, alteration or repair of real property," and "a service, *design*, analysis or other work performed for a public or private entity *in connection with* a utility, structure, *building*, . . ." (emphases added)). While that may ultimately be true, interpretation and application of these definitions in this case is not as clear cut as the Engineers suggest.

For example, the term "engineering works or systems" used in section 1001.003(c)(2) is undefined, and the intended scope is not readily ascertainable to those lacking technical expertise in this area. Section 1001.003(c)(7) is circular, stating that "the practice of engineering" is "engineering" in connection with the "construction, alteration, or repair of real property"; this definition is no more helpful in ascertaining the intended scope of engineering practice than the general definition, except it includes a category of works that may be "engineered." And section 1001.003(10)'s reference to "design . . . in connection with a . . . building" does not necessarily encompass every aspect of building design for every type of building, although it could. The attorney general's office has previously concluded that "whether a particular service or work may be adequately performed by one with the education, training, and experience of an engineer, but not that of an architect, or vice versa, is intensely a question of fact, generally requiring expert opinion." Op. Tex. Att'y Gen. No. GA-0391 (2006). We need not decide whether this is strictly a

21

factual inquiry or a mixed question of law and fact, because either way we are unable to ascertain legislative intent in this case without a more robust evidentiary record.

Having correctly determined that summary disposition was not warranted on the record before the court, the district court properly remanded the case to the agency for further proceedings.

## CONCLUSION

We hold that section 1051.703(a) of the Architecture Practice Act does not categorically preclude licensed engineers from preparing comprehensive building plans and specifications for the class of public works projects identified in that section, nor does not section 1051.601 categorically exempt licensed engineers from the Act's requirements. Instead, the enforcement matter at issue in this case depends on whether preparation of the particular building plans and specifications was within the scope and practice of engineering as defined by the Engineering Practice Act. Because the record is insufficiently developed to determine that issue as a matter of law, summary disposition was not appropriate in this case. Accordingly, the district court did not abuse its discretion in reversing the Board's decision and remanding for further proceedings. We affirm the district court's judgment.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Affirmed

Filed:   August 3, 2011